PEOPLE v VANDERVLIET

Docket No. 93260. Argued December 8, 1992 (Calendar No. 1). Decided September 21, 1993.

Daniel VanderVliet was charged in the Kent Circuit Court with two counts of second-degree criminal sexual conduct. The court, George S. Buth, J., prohibited the introduction of evidence of other crimes or wrongs in each case. The Court of Appeals, D. E. Holbrook, Jr., and Fitzgerald, JJ. (Doctoroff, P.J., dissenting), affirmed in an unpublished opinion per curiam, holding that because the misconduct evidence was not probative of a matter in issue, it was inadmissible, and that the probative value of the evidence was outweighed by its prejudicial effect (Docket No. 138141). The people appeal, arguing that the testimony of the defendant's alleged victims is admissible in each case because it was not offered to prove the defendant's character in order to show that he acted in conformity in violation of MRE 404(b).

In an opinion by Justice Boyle, joined by Justices Brickley, Riley, Griffin, and Mallett, the Supreme Court held:

Other acts evidence may be admitted if it is offered for a proper purpose under MRE 404(b), it is relevant under MRE 402 as enforced through MRE 104(b), and its probative value is not substantially outweighed by unfair prejudice. Upon request, a trial court may provide a limiting instruction.

1. MRE 404 limits the use of evidence that is logically relevant. If proffered evidence of other acts is logically relevant, and does not invoke an intermediate inference of character, it is not barred by MRE 404(b). The question is not whether the evidence falls within an exception to a supposed rule of exclusion, but rather whether the evidence is in any way relevant to a fact in issue other than by showing mere propensity. The rule is inclusionary, rather than exclusionary, and a heightened standard of logical relevance is not required; nor is a similarity between charged and uncharged conduct.

2. Evidence that is admissible for one purpose does not

REFERENCES

Am Jur 2d, Federal Rules of Evidence §§ 106, 107, 109, 111-113.
See ALR Index under Evidence Rules.

become inadmissible under MRE 404(b) because its use for a different purpose would be precluded. The evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. The prosecutor must offer evidence of other acts under something other than a character to conduct theory. The trial court should employ a balancing process under MRE 403. Other acts evidence is not admissible simply because it does not violate MRE 404(b). Rather, a determination must be made whether the danger of undue prejudice substantially outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate under MRE 403. Upon request, the trial court may provide a limiting instruction under MRE 105.

3. In this case, in response to the count involving Todd F, the defendant answered the charges with a general denial. Such a denial does not prevent the prosecutor from introducing other acts evidence at trial where it is relevant to, and probative of, a disputed issue. It was error to exclude the testimony of Steven C and John J. Evidence of both the assaults is logically relevant to and probative of the defendant's intent because it negates the otherwise reasonable assumption that the conduct was accidental, as opposed to being for the purpose of sexual gratification. Evidence of the assault of Steven C is not only relevant, but highly probative of the defendant's intent in taking Todd F to his brother's house. Without this evidence, the factfinder would be left with a chronological and conceptual void. The testimony of the defendant's supervisor likewise is not barred by MRE 404(b). It bears directly on the credibility of the defendant's general denial and is relevant to his state of mind. With respect to the count involving Steven C, it also was error to exclude the other acts evidence. The evidence pertaining to Todd F and John J is relevant, again because the defense is a general denial. Sexual purpose is an element of the offense, and the testimony is sufficiently similar to be relevant to intent under the theory of improbability.

4. In both instances, the record is insufficient to assess the probative value of the evidence under MRE 403, requiring remand to the trial court for a determination whether the probative value of the other acts evidence is substantially outweighed by its potential for unfair prejudice.

Reversed and remanded.

Justice LEVIN, writing separately, stated that, to be admitted, other acts evidence must be probative of a disputed material issue. It clearly would be a misuse of such evidence to use it to prove that the defendant engaged in the disputed criminal

sexual conduct on a particular occasion. Unless the defendant claims at trial that his conduct was accidental or not for the purpose of sexual arousal or gratification, other acts evidence should not be admitted for the purposes asserted by the prosecution.

Chief Justice CAVANAGH, dissenting, stated that announcement of a new clarified standard is unnecessary. Michigan's evidentiary rules concerning other acts testimony are capable of clear explanation, and the standards for enforcing the Michigan rules are closely similar to, if not the same as, the federal standards. The Michigan Rules of Evidence and the cases interpreting them are not based on federal law, and Michigan has its own statutory basis for the rule.

The conclusion that Michigan's rule is confusing is insufficient reason to adopt the federal rule. The factors of the Michigan rule that have created confusion also are required by the federal rule. A majority of the Court can overrule a precedent for a good reason, a bad reason, or no reason at all, but precedent should not be lightly discarded. The Court should respect precedent and not overrule or modify it unless there is some substantial reason. It would better serve the Court's purpose to look to the federal cases that interpret the rule only for assistance in clarifying and providing guidance, rather than asking trial courts to start anew, using a rule that is not clearly distinguished from the current rule.

EVIDENCE — OTHER ACTS — ADMISSIBILITY.

Other acts evidence may be admitted if it is offered for a proper purpose under MRE 404(b), it is relevant under MRE 402 as enforced through MRE 104(b), and its probative value is not substantially outweighed by unfair prejudice; upon request, a trial court may provide a limiting instruction.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

*Rhoades, McKee, Boer, Goodrich & Titta* (by *Bruce W. Neckers* and *Douglas P. Vanden Berge*) for the defendant.

BOYLE, J. In this interlocutory appeal, we consider the Court of Appeals affirmance of a circuit

court's order prohibiting the introduction of evidence of other crimes or wrongs in two second-degree criminal sexual conduct trials involving the defendant, Daniel VanderVliet. The prosecutor asserts that the testimony of the defendant's alleged victims, Todd F, Steven C, and John J, is admissible in each of the pending cases[1] because it was not offered "to prove the character of a person in order to show that he acted in conformity therewith," in violation of MRE 404(b). We evaluate this claim in light of the clarified standard articulated today: First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.[2] Consequently, we reverse the decision of the Court of Appeals in each case and remand to the trial court for further proceedings consistent with this opinion.

I

The evidentiary record consists of testimony given during the preliminary examination and two subsequent pretrial hearings held to determine the admissibility of the other acts evidence.

The defendant was employed by Kent Client Services as a case manager, working with developmentally disabled young men. In October, 1987, as part of his employment, the defendant became the

---

[1] Before the final pretrial hearing, the defense agreed to allow the prosecutor to try the cases in whichever order he felt was appropriate.

[2] *Huddleston v United States,* 485 US 681; 108 S Ct 1496; 99 L Ed 2d 771 (1988).

case manager for a mildly retarded male in his mid-twenties named Steven C.

Steven C testified that on more than one occasion he accompanied the defendant to a house in the country belonging to the defendant's brother. On October 4, 1988, at the house, the defendant asked Steven to take a shower. Following the shower, Steven said the defendant proceeded to masturbate him. After Steven ejaculated, the defendant asked Steven to rub lotion on the defendant's back. Steven said he complied because he saw that the defendant's pants were unzipped and was afraid of what the defendant might do.

On October 5, 1988, Steven complained about defendant's conduct to an employee at Southwest Center, a sheltered workshop. This complaint was communicated to a recipient rights investigator and, eventually, to the defendant's supervisor, Fred Ward.

Mr. Ward testified that, following the complaint, he started to closely supervise the defendant. The defendant was specifically informed that future client contact should occur in essentially public places, including the sheltered workshop or licensed adult foster care homes. Mr. Ward stressed that, if client contact did occur at an individual's residence, it had to be documented closely on a timely basis and occur pursuant to the prearranged treatment plan. These instructions were documented in a letter in March 1989, which explicitly directed the defendant to inform his supervisor of any client activities that took place outside a workshop setting or an adult foster care home.

The defendant was allowed to continue client contact under these restrictions, and, in May 1989, he became the case manager for a developmentally disabled male in his mid-twenties named Todd F.

Todd testified that on several occasions between May 1989 and August 1989, he accompanied the defendant to the same house. There, the defendant watched Todd urinate and shower. Todd testified that defendant touched Todd's testicles on three occasions. He also testified that the defendant would wrestle with him and sit on his genitals for long periods of time. Todd said he objected to all these alleged activities.

In August 1989, Todd informed the service coordinator of Southwest Center, Grant Sutton, that he had been to the defendant's brother's house and had wrestled with the defendant there. Mr. Sutton immediately contacted his supervisor and informed recipient rights of this conversation.

Mr. Sutton testified that his concern was aroused for three reasons. First, he was aware of Steven C's accusations against the defendant. Second, Mr. Sutton believed it was questionable conduct for a case worker to wrestle with a client. Finally, he asserted that taking a client either to a case manager's own home or a relative's home was unacceptable and unprofessional conduct.[3]

Following the second accusation, the defendant was suspended from client contact. Mr. Ward testified that during ensuing conversations, the defendant admitted he took Todd to his brother's house in violation of the conditions set forth in the memo.

A police investigation was begun in the fall of 1989. Detective Bruce Fogerty testified that the defendant voluntarily came to the Wyoming Police Department where he was informed of his rights. Defendant waived those rights.

---

[3] Although not specifically contested, Sutton's testimony is admissible to the extent relevant to each case for the reasons set forth in part v.

Regarding Steven C, the defendant admitted taking Steven to his brother's house. He also admitted that he told Steven to take a shower on one occasion because Steven had a dental appointment and Steven smelled. Defendant denied that any sexual contact occurred.

Regarding Todd F, the defendant admitted taking Todd to his brother's house. The defendant claimed that Todd had had out-patient surgery and that he was directed by Todd's doctor to look for blood in Todd's urine. Pursuant to those instructions, the defendant told Fogerty that he checked the toilet for blood after Todd urinated. The defendant admitted to tickling Todd under his arms, and on one occasion physically sitting on him. However, the defendant denied sitting on Todd's intimate areas. He asserted that any contact occurring with those areas was inadvertent or accidental. The defendant denied he ever touched Todd's testicles.

During his investigation, Detective Fogerty uncovered another allegation of sexual misconduct involving the defendant and another of his clients, John J. This third case is uncharged at this time. Because this allegation came to light after Detective Fogerty's conversation with the defendant, he was not questioned about it.

John J testified that the defendant was his caseworker. Although not identifying a specific time, John said that on one occasion the defendant told him to take a shower while both were at John's residence. Following the shower, the defendant touched John's penis, masturbating him. In response, John slapped the defendant's hand and told him to leave. The defendant then pulled his pants down a little bit and asked John to put cologne on the defendant's back. On another occasion, while the defendant and John were in the

defendant's car, the defendant told John that they were going to his brother's house. The defendant then reached for John's penis. John slapped the defendant's hand before contact was made. John also testified that he was acquainted with Steven C, who had warned him about the defendant.

After the defendant was bound over on the charge of second-degree criminal sexual conduct,[4] the prosecutor filed a memorandum concerning the admissibility of evidence under MRE 404(b). Relying on *People v Engelman,* 434 Mich 204; 453 NW2d 656 (1990), the prosecutor argued that the defendant's conduct toward each of the three alleged victims was admissible in each of the pending cases because it did not violate MRE 404(b). The trial court held that the prosecutor could not introduce evidence of other misconduct in either Todd's or Steven's case. The prosecutor appealed.

The Court of Appeals affirmed the ruling of the trial court in an unpublished opinion per curiam, decided January 23, 1992 (Docket No. 138141). A divided panel held that, because the misconduct evidence was not "probative of a matter 'in issue,' " *id.* at 2, it was inadmissible under the test enunciated in *People v Golochowicz,* 413 Mich 298, 308; 319 NW2d 518 (1982). "Consequently, allowing the evidence would frustrate the policy underlying the general exclusion of similar acts evidence . . . ." *VanderVliet, supra* at 3. The Court of Appeals also held that the probative value of the evidence was outweighed by its prejudicial effect. *Id.*[5]

Presiding Judge DOCTOROFF dissented. Relying on *People v Engelman, supra,* Judge DOCTOROFF

---

[4] MCL 750.520c(1)(h); MSA 28.788(3)(1)(h).

[5] The record does not establish that the trial court considered the probative value of the proffered evidence or whether that value was substantially outweighed by the danger of unfair prejudice, MRE 403.

concluded that "[t]he similar acts evidence in this case clearly establishes defendant's scheme, plan or system, and is material as proof that the charged act was committed,"[6] *id.* at 1.

We granted leave to appeal, 440 Mich 871 (1992).

## II

We begin the substantive portion of this opinion with a general discussion of the law regarding other acts evidence.

Logical relevance is determined by the application of Rules 401 and 402.[7]

MRE 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.[8]

MRE 402 provides:

All relevant evidence is admissable, except as

---

[6] While we disagree that the evidence was relevant to the theory of a true plan, we agree that the evidence is presumptively relevant and material to a disputed issue in the case.

[7] Because the Michigan Rules of Evidence in general parallel the text of the federal rules on which the state committee's product was based, we find helpful and, in some instances, persuasive, commentary and case law that refers to the Federal Rules of Evidence.

[8] As Imwinkelried, Uncharged Misconduct Evidence, § 2:17, p 45, explains:

This is the normal test for materiality: Does the item of evidence even slightly increase or decrease the probability of the existence of any material fact in issue? Standing alone, the item of evidence need not have sufficient probative value to support a finding that the fact exists. So long as the item of evidence affects the balance of probabilities to any degree, the item is logically relevant.

otherwise provided by the Constitution of the
United States, the Constitution of the State of
Michigan, these rules, or other rules adopted by
the Supreme Court. Evidence which is not relevant
is not admissible.

Rules 401 and 402 define the universe of evi-
dence that is logically relevant:

> [I]f the item of evidence satisfies the normal
> standards for logical relevance, most courts resist
> defense attempts to impose additional spurious
> requirements purportedly based on "logical rele-
> vance." At one time, several American jurisdic-
> tions adhered to the view that an inference cannot
> be based upon another inference. That view made
> it difficult to introduce evidence which relied on
> lengthy chains of inference for its logical rele-
> vance. In particular, that view made it difficult to
> introduce uncharged misconduct evidence which
> relied on intermediate inferences for its relevance.
> Modernly, the courts have discredited the "no
> inference on an inference" rule. The acid test is
> logical relevance, and a logically relevant act is
> admissible even when the finding of logical rele-
> vance requires a long chain of intervening infer-
> ences. [Imwinkelried, Uncharged Misconduct Evi-
> dence, § 2:17, pp 45-46.]

Simply stated, "[l]ogical relevance is the 'touch-
stone' of the admissability of uncharged miscon-
duct evidence." *Id.*

Rule 404[9] is a rule of legal relevance, defined as

---

[9] MRE 404 provides:

(a) *Character evidence generally.* Evidence of a person's char-
acter or a trait of his character is not admissible for the
purpose of proving that he acted in conformity therewith on a
particular occasion, except:

(1) *Character of accused.* Evidence of a pertinent trait of his
character offered by an accused, or by the prosecution to rebut
the same;

a rule limiting the use of evidence that is logically relevant.[10] Thus, Rule 404 presumes a showing of logical relevance. It is only then that considerations of legal relevance are implicated.

On its face, Rule 404 limits only one category of logically relevant evidence.[11] As we explained in

> (2) Character of victim of a crime other than a sexual conduct crime. Evidence of a pertinent trait of character of the victim of the crime, other than in a prosecution for criminal sexual conduct, offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;
>
> (3) Character of victim of sexual conduct crime. In a prosecution for criminal sexual conduct, evidence of the victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease;
>
> (4) Character of witness. Evidence of the character of a witness, as provided in Rules 607, 608, and 609.
>
> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

[10] See *Huddleston,* n 2 *supra* at 687, in which the Court observed:

> Article IV of the Rules of Evidence deals with the relevancy of evidence. Rules 401 and 402 establish the broad principle that relevant evidence—evidence that makes the existence of any fact at issue more or less probable—is admissible unless the Rules provide otherwise. Rule 403 allows the trial judge to exclude relevant evidence if, among other things, "its probative value is substantially outweighed by the danger of unfair prejudice." Rules 404 through 412 address specific types of evidence that have generated problems. Generally, these latter Rules do not flatly prohibit the introduction of such evidence but instead limit the purpose for which it may be introduced.

[11] As the United States Supreme Court observed in *Michelson v United States,* 335 US 469, 475-476; 69 S Ct 213; 93 L Ed 168 (1948), "The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury . . . ." See also *Engelman, supra* at 243, n 23. (Levin, J., dissenting.)

*Engelman, supra* at 212-213:

> "[o]nly one series of evidential hypotheses is for-
> bidden in criminal cases by Rule 404: a man who
> commits a crime probably has a defect of charac-
> ter; a man with such a defect of character is more
> likely . . . to have committed the act in question."
> [Citing 2 Weinstein, Evidence, ¶ 404(8), p 404-52.]

If the proponent's only theory of relevance is
that the other act shows defendant's inclination to
wrongdoing in general to prove that the defendant
committed the conduct in question, the evidence is
not admissible. The reason for the prohibition is
twofold. As noted in *Engelman, supra* at 213, n 16,
quoting Imwinkelried, *supra,* § 2:18, pp 48-49:

> "[T]he thrust of this theory is the use of the
> defendant's uncharged misconduct as circumstan-
> tial proof of conduct. More specifically, the forbid-
> den theory rests on two inferences that pose seri-
> ous legal relevance issues.
> "[T]he first step in this theory of logical rele-
> vance is inferring the defendant's character from
> the defendant's prior misdeeds. Rule 404(b) refers
> to this step as introducing the uncharged acts 'to
> prove the character of a person.' This step poses
> the legal relevance danger of prejudice. In the
> process of deciding whether to draw the inference,
> the jury must focus on the type of person the
> defendant is. . . .
> "The second step in this theory of logical rele-
> vance compounds the legal relevance dangers. The
> second step is inferring the defendant's conduct on
> a particular occasion from his or her subjective
> character. In the words of Rule 404(b), the plaintiff
> or prosecutor introduces the evidence of the defen-
> dant's subjective character 'in order to show that
> he acted in conformity therewith.'
> "When the proponent uses the defendant's sub-
> jective character as proof of conduct on a particu-
> lar occasion, there is a substantial danger that the

jury will overestimate the probative value of the evidence."[12]

Rule 404(b) limits the use of logically relevant evidence *only* when both steps of the process are violated. Therefore, if the proffered other acts evidence is logically relevant, and does not involve the intermediate inference of character, Rule 404(b) is not implicated. *Engelman, supra* at 216. If the evidence is relevant to a fact in issue (facta probantia), there may be no inference to conduct. See Imwinkelried, *supra,* § 2:21, p 55. The question is not whether the evidence falls within an exception to a supposed rule of exclusion, but rather whether the "evidence [is] in any way relevant to a fact in issue" other than by showing mere propensity, Stone, *The rule of exclusion of similar fact evidence: America,* 51 Harv L R 988, 1004 (1938). "Put simply, the rule is *inclusionary* rather than exclusionary."[13] *Engelman, supra* at 213. (Emphasis added.)

---

[12] The forbidden theory of relevance is diagrammed as follows:

| | Step 1 | Step 2 |
|---|---|---|
| THE DEFENDANT'S—>— | THE DEFENDANT'S—>— | THE DEFENDANT'S |
| UNCHARGED ACT | SUBJECTIVE | CONDUCT IN |
| | CHARACTER | CONFORMITY WITH |
| | | CHARACTER |
| The Evidence | The intermediate inference | The ultimate inference |

For a more in-depth explanation of the interaction between intermediate and ultimate inferences, see *Engelman, supra* at 212-217.

[13] Former Michigan Supreme Court justice, now federal circuit judge, James L. Ryan, observed in *United States v Vance,* 871 F2d 572, 575 (CA 6, 1989), cert den 493 US 933 (1989):

Rule 404(b), however, provides only that bad acts evidence is not admissible to prove character or criminal propensity; such evidence may be admissible for other purposes, *"such as,"* but not limited to, those listed in the rule. This court has noted that Rule 404(b) "is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissi-

Thus, the Court of Appeals reference to "the general exclusion of similar acts evidence" is mistaken. There is no policy of general exclusion relating to other acts evidence.[14] There is no rule limiting admissibility to the specific exceptions set forth in Rule 404(b). Nor is there a rule requiring exclusion of other misconduct when the defendant interposes a general denial. Relevant other acts evidence does not violate Rule 404(b) unless it is offered solely to show the criminal propensity of an individual to establish that he acted in conformity therewith.

### III

The Court of Appeals conclusion that *Golochowicz, supra,* created a rule of general exclusion allowing admission of other acts evidence only for the purposes set forth in the rule,[15] failed to acknowledge the inclusionary theory of admissibility. Rule 404(b) permits the judge to admit other acts evidence *whenever* it is relevant on a noncharacter theory. The *Golochowicz* "test" does not set the

ble uses of such evidence are identified." [Emphasis in the original.]

[14] See Imwinkelried, *supra,* § 2:31, p 76:

At this point, it should be clear that the description of the doctrine badly overstates the requirements of logical relevance: The act need not antedate the charged act; the act need not be similar to the charged act; the act need not be a crime; and the act is admissible to prove facts other than motive, identity, absence of mistake, intent, and common scheme.

See also Amsterdam, Segal & Miller, Trial Manual for the Defense of Criminal Cases (3d ed), § 368, p 1-369: "This may be well and good, if the trial judge believes it; but there is no such general rule."

[15] As we explain in part v, the assertion by the Court of Appeals that an explicitly listed Rule 404(b) rationale is not implicated, is incorrect.

standard for the admissibility of other acts evidence.

The exclusionary approach was explicitly rejected in *Engelman, supra* at 212:

> Properly understood, MRE 404(b) is a nonexclusive list of examples of situations in which the general rule excluding character evidence, MRE 404(a), is not offended because the evidence is probative of some fact other than the defendant's criminal propensity.

*People v Golochowicz,* was a homicide case in which "the only conceivable justification for admission of . . . similar-acts evidence [was] to prove the identity of the perpetrator . . . ." *Id.* at 310. Emphasizing that the purpose of the evidence was to show *identity,* the *Golochowicz* Court observed:

> It [was] because of the combined value of those two factors, the unique and uncommonly distinctive style employed by the defendant in committing the "substantially proved" uncharged similar offense, and the same distinctive *modus operandi* employed in the charged offense, that the jury is permitted to infer, if it believes the evidence, that both crimes were the handiwork of the same person, the defendant. [*Id.* at 311.]

*Golochowicz* identifies the requirements of logical relevance when the proponent is utilizing a *modus operandi theory* to prove *identity.*[16]

---

[16] First, if there is no substantial proof that the defendant committed one of the similar acts, then the other acts evidence might not be logically relevant to prove that the defendant committed the present offense. Second, if the other act lacks a special quality or circumstance, then it is not logically relevant to prove that it must have been the defendant who perpetrated the present offense. Third, if the factfinder is not being asked to infer identity from the unique method of operation (and another permissible nonpropensity inference, such as actus reus, is not applicable), the factfinder is being asked to infer

However, the *Golochowicz* approach to modus operandi cases to show identity is not a "conceptual template" to "mechanically test" all misconduct evidence barring use of other permissible theories of logical relevance.[17] *Id.* at 314.[18]

> If we ask, does [the] misconduct have to exhibit striking similarity with the misconduct being investigated, the answer is, only if similarity is relied on. Otherwise not. There are only two classes of case[s] [those in which similarity is relied on and those in which it is not], and they do not depend on the nature of the evidence, but on the nature of the argument. [Elliott, *The young person's guide to similar fact evidence—I,* 1983 Crim L R 284, 288.]

The method of analysis to be employed depends on the purpose of the offer and its logical relevance.

### A

### Turning from the theory of logical relevance

defendant's bad character from the other acts evidence. Finally, if the other act is not material to the case, e.g., the defendant does not deny he perpetrated the present offense, then it is not logically relevant to prove his identity.

[17] Unfortunately, the courts of this state, including this Court, see *Engelman, supra,* have been too quick to recite the *Golochowicz* test even when it was probably inapplicable.

[18] As we explained in *Engelman,* other acts evidence is admissible for any legitimate purpose, including to prove the act occurred, provided only that both steps of the forbidden two-step usage are not transgressed. In the case of modus operandi to prove identity, the jury focuses on the defendant's modus, not predisposition, to infer that the same person committed both acts. In the case of a genuine plan, such as the claim considered in *Engelman,* the factfinder is asked to infer that the uncharged misconduct is part of a scheme, that defendant's state of mind in the charged incident was to advance the scheme, and that defendant therefore committed the actus reus. No similarity to the charged act is necessary, and the forbidden two-step usage is not transgressed because, although the ultimate inference is to conduct, the intermediate inference is not to character.

illustrated by *Golochowicz* to the specifics of the four-pronged test it enunciated, we note that we have not defined the standard for assessing the first requirement of *Golochowicz,* that there be "substantial evidence" that the defendant[19] committed the other act. However, as the Court of Appeals has recognized, *People v Sorscher,* 151 Mich App 122; 391 NW2d 365 (1986), a heightened standard of logical relevance is not required either by the explicit language of Rule 404(b) or by any other rule. Additionally, the United States Supreme Court has unanimously held that neither the language nor the legislative history of FRE 404 supports such a conclusion. *Huddleston v United States,* 485 US 681; 108 S Ct 1496; 99 L Ed 2d 771 (1988).[20]

---

[19] As explained by Professor Imwinkelried:

The rule uses the expressions, "a person" and "he." When Congress intended to limit a particular Rule to the defendant, Congress did that expressly. By way of illustration, Rule 404(a)(1) focuses on the character of "an accused." The contrast between the wording of [R]ule 404(b) and that of 404(a)(1) is clear. We would normally assume that Congress' choice of broader language in Rule 404(b) was deliberate. In short, Rule 404(b) does not mandate that only the defendant's acts be admitted under the uncharged misconduct doctrine. [Uncharged Misconduct Evidence, § 2:05, pp 6-7.]

[20] The Court rejected the proposition that Rule 104(a) mandated a preliminary finding by the trial judge that the other act occurred.

[It] not only superimposes a level of judicial oversight that is nowhere apparent from the language of that provision, but it is simply inconsistent with the legislative history behind Rule 404(b). The Advisory Committee specifically declined to offer any "mechanical solution" to the admission of evidence under 404(b). Advisory Committee's Notes on Fed Rule Evid 404(b), 28 USC App, p 691. Rather, the Committee indicated that the trial court should assess such evidence under the usual rules for admissibility: "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availibility [sic] of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." *Ibid.*; see also S Rep No. 93-1277, p 25 (1974)

The second requirement in *Golochowicz,* that a special circumstance or quality exist, "refers to the relationship between the charged and uncharged offenses which supplies the link between them and assures thereby that evidence of the separate offense is probative of some fact other than the defendant's bad character," *id.* at 310. This language does not require a showing of distinctive similarity between other acts and the charge at issue in every instance where Rule 404(b) evidence is proffered. Where the proponents' theory is not that the acts are so similar that they circumstantially indicate that they are the work of the accused,[21] similarity between charged and uncharged conduct is not required. As we recognized in *Engelman,* the special link or circumstance is simply the

("[I]t is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i.e., prejudice, confusion or waste of time").

\* \* \*

[Q]uestions of relevance conditioned on a fact are dealt with under Federal Rule of Evidence 104(b) . . . . In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact— here, that the televisions were stolen—by a preponderance of the evidence.

\* \* \*

We emphasize that in assessing the sufficiency of the evidence under Rule 104(b), the trial court must consider all evidence presented to the jury. "[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts." *Bourjaily v United States,* 483 US 171, 179-180 [107 S Ct 2775; 97 L Ed 2d 144] (1987). [*Huddleston, supra* at 688-691.]

[21] As, for example, when the evidence is proffered to rebut innocent intent, to show motive, consciousness of wrongdoing, true plan, or knowledge.

inference other than to character. The trial court and the Court of Appeals erroneously concluded that Rule 404(b) relevance requires a high level of similarity between the proffered other acts evidence and the act charged. This approach misreads *Golochowicz*,[22] *Engelman,* and other precedent of this Court.[23]

The third "prong" of the *Golochowicz* "test," that the proffered evidence be relevant to some matter in issue, neither limits other acts evidence to the issue of identity nor restricts a determination that the other acts evidence is relevant to a matter in issue until the defendant actually raises the issue at trial. In all cases, the question is relevancy to a fact in issue. Where the trial court can reliably determine that a fact will be in issue before trial, it may determine admissibility. As we explained in *Engelman, supra,* the matter in issue might very well be the commission of the charged offense:

[22] *Golochowicz* specifically limited its similarity requirement to identity cases. *Id.* at 325. The Court did not reverse on the basis of lack of similarity. Rather, it reversed because doubt regarding the presence of sufficiently unique circumstances increased the prejudicial effect of the evidence, outweighing its probativeness. *Id.* at 326-327.

[23] See *People v Hall,* 433 Mich 573, 585, 586; 447 NW2d 580 (1989) (opinion by BOYLE, J., with RILEY, C.J. and GRIFFIN, J., concurring), in which we rejected the asserted similarity requirement where prior possession of the weapon was used to prove identity:

MRE 404(b) is not limited solely to evidence of crimes, wrongs, or acts that are *similar* to the charged offense. Rather, it is the purpose that the proffered evidence will serve, that is, the basis for its relevancy, that will dictate its requisite character.

* * *

"Relevant evidence under Rule 404(b) should, therefore, not always be excluded because it does not qualify under a similarity requirement. Other bad acts disclosed by evidence would have to be similar only if a basis for the relevance of the evidence is similarity." [Emphasis in the original.]

If it could be shown in this case that defendant did indeed follow a common scheme or plan in committing such acts against young children, it would defy logic to limit the use of that evidence to proof of identity or state of mind. The former will never be in dispute where the defendant and the victim know each other, and the defendant's state of mind is not an element of many of the offenses set forth in the criminal sexual conduct act. Yet, in many cases such evidence might be not only relevant to the determination of defendant's guilt or innocence, but also material in the sense required by *Golochowicz,* as proof that the act was committed. As explained in 2 Wigmore, Evidence (Chadbourn rev), § 304, p 249, "[w]hen the very doing of the act charged is yet to be proved, one of the evidential facts receivable is the person's design or plan to do it . . . ." [*Id.* at 220-221.]

Finally, to the extent that *Golochowicz* or *Engelman* have been understood to have superimposed a heightened prejudice versus probative weighing of the evidence under 404(b), that view is simply unfounded.[24] The fourth prong of *Golochowicz* is merely a restatement of the Rule 403 test[25] applied to all evidence to determine its legal relevance.[26] No authority has been cited for the proposition

[24] The prongs of the *Golochowicz* test were garnered from *People v Wilkins,* 82 Mich App 260; 266 NW2d 781 (1978), rev'd per curiam 408 Mich 69; 288 NW2d 583 (1980). *Wilkins,* p 270, cites *People v Oliphant,* 399 Mich 472; 250 NW2d 443 (1976), for its probative versus prejudice test. *Oliphant* at 490, n 5, cites FRE 403.

[25] The rule provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

See also n 24.

[26] To be sure, the closer the evidence approaches the forbidden inferences of character to conduct, the higher the prejudicial poten-

that the balancing process is other than that required by Rule 403, and there is no evidence that this Court intended a more restricted formulation of the balancing process than that contained in the federal rule, which does not include any superannuated weighing requirement.[27] Moreover, the Supreme Court's observation in *Huddleston* that a heightened standard of logical relevance is inconsistent with the inclusive view of the admissability of other acts evidence, is equally applicable here.[28]

Our focus in *Engelman* on logical relevance and the inclusive view of other acts evidence, clarified and limited the expansive reading of *Golochowicz* advocated by the defense and endorsed by the majority of the Court of Appeals. *Golochowicz* is not the general test for other acts evidence.

### B

We conclude this discussion of the general principles applicable to other acts evidence with some ruminations on the remarkable tenacity of the "similar act" formulation of Rule 404(b).

Beyond the historical, philosophical, and legal dispute regarding whether the rule should be interpreted as inclusionary or exclusionary, there are several reasons that might explain why the *Golochowicz* formulation is so hearty a vine in the garden of our jurisprudence.[29]

At a psychological level, the *Golochowicz* for-

---

tial. Likewise, the more clear the inference to noncharacter, the higher the probative value, and the less likely the jury, aided by a proper instruction, will misconstrue the purpose or be swayed by passion.

[27] The Advisory Committee's notes to FRE 403 authorize the trial judge to exclude marginally relevant evidence that "suggest[s] decision on an improper basis . . . ."

[28] See n 20.

[29] First, of course, is the fact that the opinion is "vintage Ryan."

mula addresses the fear, which most lawyers and many judges share, that jurors will give misconduct evidence more weight than deserved. This fear conflicts with the intuitive sense that some bad acts evidence is so powerfully probative that it would pervert the truth-seeking process to prevent a jury from using what looks like ordinary common sense. Moreover, the *Golochowicz* formulation expresses a linear perspective of admissibility, which, while it "fits" the profession's visceral anxiety regarding misconduct evidence, fails to acknowledge both that the theory of Rule 404(b) is comprehensive[30] and that the foundation of the rule is the familiar theory of multiple admissibility: evidence that is admissible for one purpose does not become inadmissible because its use for a different purpose would be precluded. Imwinkelried, § 3:01, pp 2-3; 1 Wigmore, Evidence (Tiller rev), § 13, pp 693-702.

Finally, and perhaps most importantly, "the four-pronged test" has the comfort-level appeal of a bright-line rule. The bench and bar do not have to struggle with the complexity of multiple theories of admissibility as applied in discrete instances, and the trial court does not have to make the weighing of substantial prejudice versus probative weight contemplated by Rule 403.

## IV

As the previous discussion illustrates, the bright-

---

[30] Thus, independent theories of logical relevance, those that have some tendency to advance a fact in issue other than through an inference to criminal disposition, are not mutually exclusive.

In a given case, a single act of misconduct may be admissible on several theories of relevance. To illustrate, modus operandi is admissible regarding the issue of the identity of the defendant, Imwinkelried, § 3:10, p 21, and regarding the issue of actus reus. The doctrine of probabilities may be used to prove mens rea, or to disprove accident. This list is nonexhaustive and does not limit the usefulness of these theories to the listed items.

line approach to other acts evidence is inadequate in assessing relevance under Rule 404(b). In place of the four-pronged test of *Golochowicz,* we direct the bench and bar to employ the evidentiary safeguards already present in the Rules of Evidence, as identified by the unanimous United States Supreme Court decision in *Huddleston:*

> [F]irst, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402— as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice, see Advisory Committee's Notes on Fed Rule Evid 404(b), 28 USC App, p 691; S Rep No 93-1277 at 25; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. [*Huddleston, supra* at 691-692.]

The evidence must be relevant to an issue other than propensity under Rule 404(b), to "protect[ ] against the introduction of extrinsic act evidence when that evidence is offered *solely* to prove character." *Id.* at 687. (Emphasis added.) Stated otherwise, the prosecutor must offer the other acts evidence under something other than a character to conduct theory.

Second, as previously noted, the evidence must be relevant under Rule 402, as enforced through Rule 104(b), to an issue or fact of consequence at trial. 2 Weinstein & Berger, Evidence, ¶ 404[08], p 404-49.

Third, the trial judge should employ the balanc-

ing process under Rule 403. Other acts evidence is not admissible simply because it does not violate Rule 404(b). Rather, a "determination must be made whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403." 28 USCA, p 196, advisory committee notes to FRE 404(b).

Finally, the trial court, upon request, may provide a limiting instruction under Rule 105.

### V

The relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material. It is to this relationship and what it dictates for the evidence in these cases that we now turn.[31]

### A

We deal first with the charge involving Todd F. At oral argument, the prosecutor and the defense acknowledged that the defendant had answered the criminal sexual contact charges with a general denial and had not asserted accident or mistake. While acknowledging that the defendant's theory at trial will not contest that the defendant was present at the times and places alleged, and suggesting he will question the "lack of veracity" of witnesses Todd F and Steven C, the defense contends that the defendant's general denial prevents the other acts evidence from being relevant to a matter in issue in the case of Todd F. We disagree.

The defendant is charged with two counts of

---

[31] We analyze the admissibility of the other acts evidence with regard to each victim in the order we perceive most logical. See n 1.

second-degree criminal sexual conduct.[32] The statute requires the prosecutor to prove beyond a reasonable doubt that sexual contact occurred. To prove sexual contact, the prosecutor must show that the defendant intentionally touched Todd's genitals or the clothing covering Todd's genital parts, and that this touching "can reasonably be construed as being for the purpose of sexual arousal or gratification."

During the preliminary examination and pretrial hearings, the prosecutor presented Todd F 's testimony that the defendant sat on Todd's genitals for extended periods of time while they wres-

---

[32] MCL 750.520c(1)(h); MSA 28.788(3)(1)(h). The requirements of the statute and any corresponding definitions are presented below:

(1) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:

*   *   *

(h) That other person is mentally incapable, mentally disabled, mentally incapacitated, or physically helpless, and any of the following:

*   *   *

(ii) The actor is in a position of authority over the victim and used this authority to coerce the victim to submit.

(2) Criminal sexual conduct in the second degree is a felony punishable by imprisonment for not more than 15 years.

"Mentally disabled" means that a person has a mental illness, is mentally retarded, or has a developmental disability. [MCL 750.520a(e); MSA 28.788(1)(e).]

"Mentally retarded" means significantly subaverage general intellectual functioning which originates during the developmental period and is associated with impairment in adaptive behavior. [MCL 750.520a(h); MSA 28.788(1)(h).]

"Sexual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification. [MCL 750.520a(k); MSA 28.788(1)(k).]

tled. Detective Fogerty testified that the defendant admitted to sitting on Todd on one occasion, that no sexual contact occurred, or that any contact with Todd's private areas was inadvertent or accidental. The defendant's supervisor Fred Ward testified that before the defendant took Todd to his brother's house, he had been informed that client contact should occur in public settings and had been directed to advise and document client contacts outside such a setting.

The defendant's admission to Detective Fogerty that he had tickled Todd, and that any contact between himself and Todd's private areas was accidental, together with Ward's testimony that defendant admitted that he had taken Todd to his brother's home despite a written directive not to do so except in accord with specified procedures, assures the relevancy of Steven C's testimony, the general denial notwithstanding.

As the United States Supreme Court recently explained in *Estelle v McGuire,* 502 US 62; 112 S Ct 475, 480-481; 116 L Ed 2d 385 (1991), a defendant's general denial of the charged act does not prevent a matter from being at issue:

> In holding the prior injury evidence inadmissible, the Court of Appeals also relied on the theory that, because no claim was made at trial that Tori died accidentally, the battered child syndrome evidence was irrelevant and violative of due process. . . . This ruling ignores the fact that the prosecution must prove all the elements of a criminal offense beyond a reasonable doubt. In this second degree murder case, for example, the prosecution was required to demonstrate that the killing was intentional. . . . By eliminating the possibility of accident, the evidence regarding battered child syndrome was clearly probative of that essential element, especially in light of the fact that

McGuire had claimed prior to trial that Tori had injured herself by falling from the couch. The Court of Appeals, however, ruled that the evidence should have been excluded because McGuire did not raise the defense of accidental death at trial. But the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense. In the federal courts "[a] simple plea of not guilty . . . puts the prosecution to its proof as to all elements of the crime charged." *Mathews v United States,* 485 US 58, 64-65; 108 S Ct 883, 887; 99 L Ed 2d 54 (1988).

In Michigan, as in the federal courts, a plea of not guilty puts the prosecution to its proofs regarding all elements of the crime charged. MCR 6.301(A); *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972). Thus, a tactical general denial by a defendant does not prevent the prosecutor from introducing other acts evidence at trial. The other acts evidence is relevant to, and probative of, the defendant's innocent intent in the Todd F case.[33] We therefore hold that the trial court erred in determining that the testimony of Steven C and John J was inadmissible.

A general denial presumptively puts all elements of an offense at issue. While it does not automatically entitle the prosecutor to a pretrial

---

[33] Indeed, it is all but impossible to envision a scenario in the Todd F case in which the defendant's state of mind would not become material even if that term is limited to what is specifically contested in the course of trial. The prosecutor has evidence of a noncustodial admission. Assuming the statement is admitted at trial, cross-examination regarding its content will make the issue of innocent intent material. If the defendant sought to prevent the portion of his statement relating to the claim of accident from being admitted, he might do so on the theory that intent was not in issue. However, to concede intent would be to run the risk of a jury instruction that defendant had agreed that, if the jurors found contact, it was undisputed that the contact was sexual, and to concede contact for the purpose of sexual arousal is fourth-degree criminal sexual conduct. MCL 750.520e; MSA 28.788(5).

ruling that the proffered evidence is admissible, the defense may not bar such evidence where it disputes the material fact of consequence to which the other acts evidence is relevant. In short, a defense need not be formally set up to create an issue clearly within the facts. 2 Wigmore, Evidence (Chadbourn rev), § 307, p 262.

The consequential fact, i.e., defendant's innocent intent, is more than a plausible or speculative defense in the Todd F case. Moreover, Steven C's testimony is sufficiently similar[34] to Todd F 's testimony to make it objectively less probable that the defendant acted with innocent intent in the Todd F case.[35] When other acts are offered to show

[34] The need for other acts to be similar to one another *in the innocent intent context* derives from the requirements of logical relevance, rather than the previous mistaken assumption that all other acts needed to be similar.

[35] This theory of relevance is often referred to as "the doctrine of chances," Imwinkelried, § 4:01, p 4. Also see 2 Wigmore, Evidence (Chadbourn rev), § 302, pp 241-247; Imwinkelried, *The dispute over the doctrine of chances,* 7 Crim Jus 16 (1992), and 22 Wright & Graham, Federal Practice & Procedure, § 5247, pp 517-519. This theory is widely accepted although its application varies with the issue for which it is offered. Where material to the issue of mens rea, it rests on the premise that "the more often the defendant commits an actus reus, the less is the likelihood that the defendant acted accidentally or innocently," Imwinkelried, § 3:11, pp 22-23. On the basis of the defendant's allegation that John J was one of twenty-five or thirty clients that defendant supervised at one time, we can intuitively conclude that it is objectively improbable that three out of thirty clients would coincidentally accuse defendant of sexual misconduct, *State v Craig,* 219 Neb 70, 78; 361 NW2d 206 (1985).

For a fine example of the application of the doctrine of chances to negate innocent intent, see *United States v York,* 933 F2d 1343, 1350 (CA 7, 1991), cert den 502 US 916; 112 S Ct 321; 116 L Ed 2d 262 (1991):

> The man who wins the lottery once is envied; the one who wins it twice is investigated. It is not every day that one's wife is murdered; it is more uncommon still that the murder occurs after the wife says she wants a divorce; and more unusual still that the jilted husband collects on a life insurance policy with a double-indemnity provision. That the same individual should later collect on exactly the same sort of policy after the grisly death of a business partner who owed him money raises eye-

intent, logical relevance dictates only that the charged crime and the proffered other acts "are of the same general category." Imwinkelried, Uncharged Misconduct Evidence, § 3:11, p 23.[36] Evidence of both of the alleged assaults is logically relevant and probative of the defendant's intent in the Todd F case because it negates the otherwise reasonable assumption that the contact described in testimony by Todd F was accidental,[37] as op-

---

brows; the odds of the same individual reaping the benefits, within the space of three years, of two grisly murders of people he had reason to be hostile toward seem incredibly low, certainly low enough to support an inference that the windfalls were the product of design rather than the vagaries of chance.

[36] See *id.*, pp 22-23. The level of similarity required when disproving innocent intent is less than when proving modus operandi.

[37] Professors Wright and Graham explain:

The final exception listed in Rule 404(b), "absence of mistake or accident," is simply a special form of the exception that permits the use of other crimes to prove intent. In some applications it overlaps the exception for knowledge in that proof that the defendant was aware of the nature of an act at an earlier point in time makes it unlikely that he would have forgotten that information at the time of the charged crime. Often the absence of mistake or accident is proved on a notion of probability, i.e., how likely is it that the defendant would have made the same mistake or have been involved in the same fortuitous act on more than one occasion. The relevance of other crimes for this purpose depends very much on the nature of the act involved; one might inadvertently pass more than one counterfeit bill but two accidental shootings of the same victim seem quite unlikely.

The justification for admitting evidence of mistake or accident is the same as for the other exceptions involving proof of the defendant's state of mind. When offered for this purpose, no inference to any conduct of the defendant is required and, in addition, in many cases the evidence does not require any inference as to the character of the accused. [22 Wright & Graham, n 35 *supra*, § 5247, pp 517-518.]

For further examples, see Imwinkelried, Uncharged Misconduct Evidence, § 5:10, p 26:

There are numerous hypothetical and actual examples of the use of uncharged misconduct to disprove a claimed accident.

posed to being for the purpose of sexual gratifica-
tion. Finally, evidence of the assault of Steven C is
not only relevant, but highly probative of the
defendant's intent in taking Todd to his brother's
house. Without such evidence, the factfinder would
be left with a chronological and conceptual void
regarding the events surrounding Ward's directive
to the defendant, *United States v Ostrowsky*, 501
F2d 318, 322 (CA 7, 1974).

The other acts testimony of Steven C[38] is rele-
vant under Rule 404(b). However, because Rule
403 determinations are best left to a contempora-
neous assessment of the presentation, credibility,
and effect of testimony,[39] we remand this case to
the trial court for further proceedings.

Wigmore's hypothetical of the three shots is a leading illustra-
tion. The defendant claims that he accidentally discharged the
rifle in the victim's direction on each occasion; but as the
number of "accidental" discharges increases, the claim of acci-
dent becomes less believable. The courts often admit uncharged
misconduct in child abuse cases when the defendant claims
that he or she accidentally injured the child. If the defendant
claims that he accidentally touched a child's genital organs,
evidence of the defendant's similar uncharged sexual miscon-
duct is admissible to prove the defendant's lewd intent.

If the defendant claims that she intended to merely discipline
her child, evidence of uncharged misconduct may be admissible
to establish the defendant's intent to injure the child. If the
defendant claims that he accidentally bumped into or ran down
the victim, evidence of the defendant's other assaults on the
same or similar victims is admissible to show intent. In a theft
case when the defendant claims that he inadvertently picked
up the wrong fungible property, evidence of similar thefts is
admissible to show intent to steal.

[38] John J's testimony, like Steven's, is sufficiently similar to Todd's
to make it objectively improbable that the defendant acted with
innocent intent in the Todd F case. Therefore, John J's testimony is
relevant to negate innocent intent. However, as with the testimony of
Steven C, we remand for a trial court determination of whether the
probative value of John's testimony is substantially outweighed by
the risk of unfair prejudice.

[39] *United States v York*, 933 F2d 1343, 1352 (CA 7, 1991).

B

The testimony provided in the Todd F case by the defendant's supervisor, Fred Ward, that the defendant had been allowed to continue client contact on the specific condition that such contact occur in public or on a documented basis pursuant to a treatment plan, and that the defendant had admitted to Ward that he nonetheless took Todd to his brother's house without documentation, does not implicate Rule 404(b) and is admissible for its bearing on the defendant's state of mind.

The defendant's conduct on the job, including his failure to comply with Ward's instructions and to document his nonpublic contact with clients, did not amount to a civil or criminal legal wrong. Therefore, Ward's testimony is admissible for its probative force to prove the accusation against the defendant, Rule 401, *United States v Hatch*, 926 F2d 387 (CA 5, 1991).

However, to underscore our observation that Rule 404 is not a combination lock requiring particular numbers to be spun[40] before the door to admissibility swings open, we observe that even assuming the defendant's violation of Ward's directive is another wrong "act," admission would not violate Rule 404(b). The defendant does not dispute that he was present at the times and place alleged. Thus, the uncontested violation of Ward's directive bears directly on the credibility of the defendant's general denial and is relevant to the defendant's state of mind.[41] In this configuration, there is no

[40] Elliott, *supra* at 291.

[41] Imwinkelried, Uncharged Misconduct Evidence, § 5:04, pp 8-9:

A few examples will suffice. Suppose that the defendant is charged with unlawful possession of cocaine. The defendant claims that his possession was unknowing; he asserts an innocent state of mind and denies mens rea. The prosecutor may

requirement that the other act bear any similarity to the charged act. Because there is no inference to character, and because the evidence is powerfully probative of a primary issue in dispute, the defendant's state of mind, we hold that Ward's testimony would be admissible even if it were another act within the meaning of Rule 404(b).

C

We deal next with the admissibility of the other acts evidence in the charge involving Steven C.

During the preliminary examination and pretrial hearings, Steven C testified that the defendant asked him to take a shower, and that following that shower the defendant proceeded to masturbate Steven. The alleged assault occurred at the defendant's brother's house while the defendant was Steven's caseworker. Detective Fogerty testified that while the defendant admitted taking Steven to his brother's house and asking him to take a shower, he denied any sexual contact occurred. The defendant answered these charges with a general denial. Under Rule 404(b), the defendant's general denial makes presumptively

prove that at the time the police arrested the defendant in possession of the cocaine, the defendant had a false driver's license on his person. The possession of the false license is logically relevant to prove mens rea because it suggests the defendant's consciousness of guilt. Possession of cocaine and possession of a forged license are radically different crimes, but the dissimilarities between the two crimes do not negate the logical relevance of one act to the other.

Or assume that the defendant is charged with drug trafficking rather than simple possession. At the time of the defendant's arrest, the defendant had a gun on his person. The crime of unlawful possession of a weapon is hardly similar to the offense of possession of marijuana with intent to distribute. Yet the weapon offense is logically relevant to prove the mens rea element of the charged crime. Professional drug traffickers often carry weapons to protect their drugs.

relevant other acts evidence bearing on an issue other than propensity. Accordingly, as in the Todd F case, the trial court and the Court of Appeals erred in concluding that other acts testimony was not admissible because the defendant had not formally indicated what would be contested at trial.[42]

In *Engelman,* we rejected the defendant's contention that the proffered evidence was inadmissible because the defendant had denied commission of the offense and had not put in dispute his identity or state of mind;[43] "[c]learly, such a scheme, plan, or system on the defendant's part, if properly established, would serve as the intermediate inference necessary to ensure that the evidence sought to be admitted is not character evidence, and thus not necessarily excluded under the

[42] For the reasons set forth in part V(B), evidence pertaining to the ethical limitations regarding taking a client to a private home is relevant, MRE 401. Secondly, because intent is in dispute, Todd and John's testimony would be relevant in the case in chief.

[43] See *United States v Hadley,* 918 F2d 848, 852 (CA 9, 1990), lv gtd 503 US —; 112 S Ct 1556; 117 L Ed 2d 491 (1992), dis per curiam 506 US —; 113 S Ct 486; 121 L Ed 2d 324 (1992), reh den 506 US —; 113 S Ct 1068; 122 L Ed 2d 372 (1993), where the United States Court of Appeals for the Ninth Circuit observed:

At trial, [the defendant's] defense was a denial of participation in the acts of which he was convicted; he offered not to argue the issue of intent. Thus, he contends . . . the government [cannot] prov[e] intent with evidence of prior bad acts.

* * *

The government must prove every element of the crime beyond a reasonable doubt. This burden is not relieved by a defendant's promise to forgo argument on an issue. [The defendant] cannot preclude the government from proving intent simply by focusing his defense on other elements of his crime. [The defendant's] choice of defense did not relieve the government of its burden of proof and should not prevent the government from meeting this burden by an otherwise acceptable means. Rule 404(b) permits the government to prove intent by evidence of prior bad acts, and we have already held that admission of such a proof in this case was not an abuse of discretion under the rule. [Citations omitted.]

rule," *supra,* p 220. When relevance to an issue other than mere propensity is found, Rule 404(b) is not violated.

In the Steven C case, as in the Todd F case, the evidence of both other acts is relevant because the defense is a general denial. Sexual purpose is an element of the offense, see *United States v Marin-Cifuentes,* 866 F2d 988 (CA 8, 1989), and the testimony is sufficiently similar to be relevant to intent under the theory of improbability.[44] As the Supreme Court explained in *Huddleston,* other acts evidence is especially pertinent where the trial court determines that the issue "involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Id.* at 685.

Thus, the relevance requirement of Rule 404(b) is not violated by introduction of the other acts evidence in the Steven C case. However, as with the admissibility of Steven C's and John J's testimony in the Todd F case, the record is insufficient to reliably assess the probative value of the evidence under Rule 403.[45] Moreover, because *Golo-*

---

[44] As noted in the discussion of the Todd F case, we agree with the prosecution that the improbability that the other acts are an unlikely coincidence is relevant to negate a claim of innocent intent. A caseworker takes a developmentally disabled male client to a private home and directs the client to permit exposure of his body (all three cases), for ostensible medical purposes (Steven and Todd's cases), and then uses lotion to perpetuate contact while furtive masturbation takes place (Steven and John's cases). Indeed, there is an even more striking similarity between these incidents and those we observed were sufficient to indicate a signature in *People v Lee,* 434 Mich 59, 94-95; 450 NW2d 883 (1990).

[45] FRE 401 Advisory Committee Notes:

The fact to which evidence is directed need not be in dispute. While situations will arise which call for the exclusion of evidence offered to prove a point conceded by the opponent, the ruling should be made on the basis of such considerations as waste of time and undue prejudice (see Rule 403), rather than under any general requirement that evidence is admissible only if directed to matters in dispute.

*chowicz* erroneously linked relevance to the issues actually disputed at trial, *id.* at 316, we are concerned that the pretrial posture of the defense may have been detrimentally affected by the notion that a general denial precludes all offers of Rule 404(b) evidence. Fairness requires remand to the trial court.

### VI

On remand, the trial court is to further explore and identify the probative value of the other acts evidence in the Todd F and Steven C cases to the fact of consequence, i.e., mens rea, and determine whether the probative value of the other act testimony is "substantially outweighed" by its potential for unfair prejudice, MRE 403.[46] The parties

[46] The difficulty in such determinations involves the multilayered process of judging the relationship of the evidence to points that are actually in issue, 2 Wigmore, Evidence (Chadbourn rev), § 305, pp 252-255; Imwinkelried, *The use of evidence of an accused's uncharged misconduct to prove mens rea: The doctrines which threaten to engulf the character evidence prohibition,* 51 Ohio St L J 575 (1990).

Also see Elliott, *supra* at 292, who cautions, "[b]eing a sledgehammer [similar acts] should not be used to crack peanuts." However, trial judges should be equally wary of strategic attempts to foreclose legitimate resort to other acts evidence. For example, from a Rule 403 standpoint, *not* discussing intent where needed to illuminate why and how an actus reus occurred, might confuse the jury more than allowing the evidence in over the attempted stipulation. As Rule 102 declares, truth and justice are the goals of the Michigan Rules of Evidence. Professor Grano observed in an analogous criminal procedure setting:

"Truth, therefore, must be the primary goal of procedure. Indeed, truth must be the goal of any rational procedural system, whether accusatorial or inquisitorial. Reasonable persons may disagree about the better method of determining truth, but no rational person touts a procedural system because it makes discovery of truth more difficult." [*People v Allen,* 429 Mich 558, 663; 420 NW2d 499 (1988) (BOYLE, J., dissenting), citing Grano, *Implementing the objectives of procedural reform: The proposed Michigan Rules of Criminal Procedure—part I,* 32 Wayne L R 1007, 1011-1012 (1986).]

must also be afforded the opportunity to further support or rebut other theories, such as modus operandi and unlikely coincidence, for relevancy to actus reus.[47] However, we caution the bench and bar that other acts evidence must move through a permissible intermediate inference, such as mens rea, lack of accident, or common plan or scheme, to be relevant to actus reus. Absent such an intermediate inference, the other acts evidence bears only on propensity and is inadmissable.

The source of the burden imposed on trial courts when assessing relevance under Rule 404(b) and admissibility under Rule 403 is not in abstract propositions of governing law. The root of the problem is the inherent complexity of evaluating the life of the modern day trial within a shifting mosaic of consequential facts, relevance of the evidence, state of the proofs, and predictions about the state of mind of the factfinder.

> In the formalistic days of the common law, ascertaining the hypothesis which governed a particular controversy was—in theory at least—simple; one looked to the pleadings. A line of proof could not be directed to a proposition unless it had been placed in issue by the pleadings, and thus had been explicitly labeled as a consequential fact. [1 Weinstein, Evidence, ¶ 401(04), p 401-27.]

Amendment of the pleadings to conform with

---

[47] For example, the defendant's brief notes that John J was one of twenty-five to thirty clients that defendant supervised at one time. While we have concluded, for purposes of proving the defendant's state of mind, that three similar accusations are sufficiently unlikely to meet the improbability threshold, unlikely coincidence to prove actus reus requires a more rigorous enforcement of relevancy because it more closely approaches the forbidden inference of character to conduct. Statistical evidence bearing on the likelihood or unlikelihood of such accusations, may furnish the basis for a conclusion of relevancy, which our intuitive sense cannot supply in the actus reus context.

the proofs is now universally accepted,[48] and in Michigan authorized by MCL 600.2301; MSA 27A.2301, and MCR 6.112(G). Adding to the complexity of "ascertaining the hypothesis" that governs a trial under contemporary standards for amendment of the pleadings, the trial courts of this state must also evaluate the admissibility of other acts evidence against the backdrop of the law governing included and cognate offenses. The defendant is not required to contest an element of the charged offense to create an issue of fact regarding necessarily included offenses deemed to be encompassed by the information. *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975).[49] Furthermore, the doctrine of cognate offenses seemingly permits a disputed issue to be raised by the testimony of any witness, irrespective of whether the theory of defense actually encompasses the evidentiary theory that testimony might create. *People v Beach,* 429 Mich 450, 490; 418 NW2d 861 (1988). Finally, the trial court may not instruct a jury that uncontested elements of an offense are established. *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975). These considerations exclude a formalistic approach that defines consequential facts either by reference to the pleadings alone or

---

[48] Modern pleading rules are broadly construed to permit amendment to conform to proofs actually introduced. See 1 Weinstein, ¶ 401[04], p 401-27, who observes:

> [M]atter[s] initially believed by a party to be irrelevant may prove to be relevant in the course of a trial, while evidence admitted in the judge's belief that it pertains to a consequential fact in issue may ultimately prove related to a fact not in issue.

> *   *   *

> A lawsuit entails at least as many lines of proof as there are controverted consequential facts.

[49] Thus, the elements of necessarily included offenses, like the elements of the charged offense, are put in issue when a general denial is entered.

by reference to those facts expressly made material at trial.[50] They also define the parameters of the dilemma, which, simply stated, is that no judge can be expected to correctly assess the evidentiary issue unless and until the court is presented with a concrete theory of defense that allows the court to determine relevancy. Without such a concrete presentation, a defendant's general posture, as here, requires the trial judge to assume the relevancy of other acts proffered under noncharacter theories of admissibility.

These considerations underscore the wisdom of embracing an approach to discovery, undertaken by many state courts and the federal judiciary, which promotes reliable decision making. To assist the judiciary in this extraordinarily difficult context and to promote the public interest in reliable fact finding, we intend to adopt a modification of Rule 404(b). We require the prosecution to give pretrial notice of its intent to introduce other acts evidence at trial,[51] and authorize the trial judge, consistent with the law in ten other states,[52] to require the defendant to articulate his theory or theories of defense.[53]

Where pretrial procedures, including requests for offers of proof,[54] do not furnish a record basis to reliably determine the relevance and admissibility

[50] The first approach occasions premature inclusion of the evidence, the second would cause premature exclusion.

[51] A notice requirement prevents unfair surprise and offers the defense the opportunity to marshal arguments regarding both relevancy and unfair prejudice.

[52] 2 LaFave & Israel, Criminal Procedure, § 19.4(e), pp 519-520.

[53] Michigan recognizes the broad power of the trial court to prevent ambush and surprise through the use of discovery, *People v Freeman (After Remand),* 406 Mich 514, 516; 280 NW2d 446 (1979); *People v Maranian,* 359 Mich 361; 102 NW2d 568 (1960); *People v Johnson,* 356 Mich 619; 97 NW2d 739 (1959), limited only by a defendant's right not to incriminate himself. See *Williams v Florida,* 399 US 78; 90 S Ct 1893; 26 L Ed 2d 446 (1970).

[54] MRE 103.

of other acts evidence, the trial court should employ its authority to control the order of proofs,[55] require the prosecution to present its case in chief, and delay ruling on the proffered other acts evidence until after the examination and cross-examination of prosecution witnesses. If the court still remains uncertain of an appropriate ruling at the conclusion of the prosecutor's other proofs, it should permit the use of other acts evidence on rebuttal, or allow the prosecution to reopen its proofs after the defense rests, if it is persuaded in light of all the evidence presented at trial, that the other acts evidence is necessary to allow the jury to properly understand the issues, *United States v Colon,* 880 F2d 650 (CA 2, 1989).

We strongly encourage this flexible approach to determining admissability. The probative value of other acts evidence and its true potential for prejudice is often unclear until the proofs are actually presented. Other acts evidence relevant to elements technically at issue because of a not guilty plea may initially have only marginal probative value in comparison to the potential prejudice generated by the evidence. Where, for example, the real issue contested is whether the act was committed, and the prosecution's claim is that the disputed issue of mens rea requires admission of other acts evidence in the case in chief, the trial court should defer the ruling on admissability where the jury would be likely to determine criminal state of mind from the doing of the act, allowing admission in the case in chief only if the evidence of other acts meets the standards for admission as proof of actus reus. On the other hand, in some cases the cross-examination of witnesses in the case in chief may make it clear that the intent with which the act was committed is

[55] MRE 611.

likely to be a matter of significant concern to the factfinder. The prosecutor should not be allowed to introduce other acts evidence only because it is technically relevant, nor should the defendant be allowed to interdict proofs that are highly probative of a truly contested issue. By waiting to determine the admissability of other acts evidence relevant to an element only technically at issue, the trial court is able to forestall gamesmanship by the parties and insure the admission of evidence that possesses significant probative value. The ultimate goal is an enlightened basis for the trial court's conclusion of relevance and for the attendant inquiry under MRE 403.

### CONCLUSION

We reverse the decision of the Court of Appeals. The testimony of Fred Ward is relevant and admissible in the Todd F case. The testimony of Steven C and John J is relevant in the Todd F case. The testimony of Todd F and John J is relevant in the Steven C case. We remand the case to the trial court for further proceedings consistent with this opinion.

BRICKLEY, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BOYLE, J.

LEVIN, J. (*separate opinion*). It is difficult to argue with much of what is said in the majority opinion. I agree, for example, with the "clarified standard articulated today" on p 55.[1]

---

[1] We evaluate this claim in light of the clarified standard articulated today: First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*Ante,* p 55.]

I also agree that MRE 404(b) is "inclusionary," not "exclusionary."

I further agree that "similarity between charged and uncharged conduct is not required."[2] MRE 404(b) speaks of "other crimes, wrongs, or acts," not "similar" acts.

And I agree, as set forth in *Huddleston v United States,* 485 US 681; 108 S Ct 1496; 99 L Ed 2d 771 (1988), that a trial court need not itself make a preliminary finding that the people have proved the "other act" by a preponderance of the evidence before it admits other acts in evidence; other acts evidence may be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the other act.

The opinion directs the bench and bar to "employ the evidentiary safeguards"[3] identified in *Huddleston* and quotes from pp 691-692 of the opinion.[4] Earlier in the opinion, Chief Justice Rehnquist emphasized that the issue on which the other acts evidence is offered must concern a

---

[2] *Ante,* p 69.

[3] *Ante,* p 74.

[4]   [F]irst, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402—as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice, see Advisory Committee's Notes on Fed Rule Evid 404(b), 28 USC App, p 691 [Fed Rules of Evid, Note following Rule 404(b)]; S Rep No. 93-1277 at 25; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. [*Huddleston, supra,* pp 691-692.]

The rules referred to are, of course, the Federal Rules of Evidence, not the Michigan Rules of Evidence.

"material issue,"[5] a "disputed issue."[6]

The reliance on *Estelle v McGuire,* 502 US 62; 112 S Ct 475; 116 L Ed 2d 385 (1991), is, I think, misplaced. The United States Supreme Court did not there hold or say that "a defendant's general denial of the charged act does not prevent a matter from being at issue."[7] The holding reported in that case, as set forth in the syllabus in the United States Supreme Court Reports, Lawyers' Edition, Second Series, report, was:

> Introduction of evidence to prove "battered child syndrome" at California murder trial for allegedly killing infant, and jury instruction as to evidence's use, held not to violate *due process.* [116 L Ed 2d 385. Emphasis added.]

*Estelle v McGuire* is one of many decisions in which the United States Supreme Court has limited the use of federal habeas corpus to review state court decisions on asserted federal constitutional grounds. The United States Supreme Court in *Estelle v McGuire* held only that the Due Process Clause did not prevent the use made of other acts evidence in that case. The United States Supreme Court did not preclude the adoption, in the federal courts or in other state courts of standards more protective of the accused's right to a fair trial.

I

My concern with the majority opinion is that it

---

[5] *Id.,* p 683.

[6] *Id.,* p 685. The material quoted from pp 691-692 (n 4 *supra*), does not repeat "material issue" or "disputed issue"—it speaks more generally: "first, from the requirement of Rule 404(b) that the evidence be offered for a *proper* purpose." (Emphasis added.)

[7] *Ante,* p 77.

does not stress that the other acts evidence must be probative of a *disputed material* issue.[8]

The issue in the instant case is more like the issue presented in *People v Engelman,* 434 Mich 204; 453 NW2d 656 (1990), than the issue presented in *People v Golochowicz,* 413 Mich 298; 319 NW2d 518 (1982).

In *Golochowicz,* there was no dispute that a crime had been committed. The disputed issue was whether Golochowicz had committed it. Other acts evidence was used to identify him as the perpetrator.

In *Engelman,* the issue was whether, as here, a crime had been committed. The prosecutor sought to introduce other acts evidence—a photograph of the defendant standing next to a nude young woman—to show that Engelman, who was charged with third-degree criminal sexual conduct, had placed his mouth on the penis of a fifteen-year-old boy. This Court held, in an opinion by Justice BOYLE, signed by Chief Justice RILEY and Justices BRICKLEY and GRIFFIN, and in a concurring opinion which I wrote, signed by Justices CAVANAGH and ARCHER, that the other acts evidence (a photograph) was not admissible.

This case is much like *Engelman* in the sense that VanderVliet is charged with criminal sexual conduct, and the disputed issue is not identity, as in *Golochowicz,* but whether he engaged in criminal sexual conduct.

Steven C testified that VanderVliet asked him to take a shower, and that, following the shower, VanderVliet masturbated him and he ejaculated. Todd F testified that VanderVliet touched his testicles on three occasions. John J testified that VanderVliet masturbated him.

---

[8] The words "material fact of consequence" appear on p 79, and the word "material" no doubt appears in other parts of the opinion.

There is a suggestion in Todd F that Vander-Vliet may claim that any genital contact was accidental. If he so asserts at trial, other acts evidence might indeed be admissible to show that the genital contact was not accidental.

It is, however, unlikely that VanderVliet will contend at trial that he accidentally masturbated Steven C or John J, or that, while conceding that he did masturbate them, he did so, e.g., as part of his supervisory responsibility, to determine whether Steven C or John J could achieve an erection or ejaculate, and did not do so "for the purpose of sexual arousal or gratification."[9]

It clearly would be a misuse of other acts evidence to allow such evidence to be used to prove that VanderVliet did indeed touch the testicles and masturbate (the actus reus) one or more of the persons who were under his care and supervision. As stated in a standard treatise on federal practice and procedure:

> Where the proof of other acts is offered to show that the person engaged in the disputed conduct, the weak probative value of the evidence of other crimes, wrongs, or acts is swamped by the countervailing considerations of fairness and efficiency. Therefore, the general rule is, as stated in Rule 404(b), that other acts may not be used to prove the conduct of the actor. [22 Wright & Graham, Federal Practice & Procedure, § 5239, p 438.]

II

The court rule, subparagraph b of MRE 404, quite explicitly, bars the use of other acts evidence to prove that the disputed conduct (actus reus) was, in fact, committed by the defendant. The rule

[9] Cf. MCL 750.520a(k); MSA 28.788(1)(k).

states that other acts evidence is not admissible "to prove the character of a person *in order to show that he acted in conformity therewith.*" (Emphasis added.) It is admissible under the court rule only "for *other purposes.*" (Emphasis added.)

The preceding subparagraph a of MRE 404 states the same policy: "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith *on a particular occasion*" (emphasis added) with exceptions not here pertinent.[10]

---

[10] Rule 404 Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes

(a) *Character evidence generally.* Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) *Character of accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) *Character of victim of a crime other than a sexual conduct crime.* Evidence of a pertinent trait of character of the victim of the crime, other than in a prosecution for criminal sexual conduct, offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) *Character of victim of sexual conduct crime.* In a prosecution for criminal sexual conduct, evidence of the victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease;

(4) *Character of witness.* Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [Emphasis in original.]

The concept that character evidence is not admissible—in the words of the catchline heading to MRE 404, to "prove conduct"—is fundamental.

### III

Unless VanderVliet claims at trial that the claimed touchings were accidental or were not for the purpose of sexual arousal or gratification, other acts evidence should not be admitted at his trial for any of the purposes so far identified by the prosecutor.

CAVANAGH, C.J. (*dissenting*). I write separately because this Court has adopted, developed, applied, and relied on Michigan's own other acts evidentiary rule since 1858,[1] and Michigan has its own statutory basis for the rule. Announcement of a new "clarified standard" is not necessary.

### I

Under the federal rule, other acts evidence is admissible if the evidence is logically relevant, FRE 401, and probative of an issue other than propensity, FRE 404. The federal rule also requires enough evidence for the judge to find that the jury could reasonably conclude by a preponderance of the evidence that the other act occurred, FRE 104(b). The judge then must weigh the probative value against potential undue prejudice as required by FRE 403. If requested, the judge also must give a limiting instruction to the jury, FRE 105.

The Michigan rule, though using language different from the federal rule, encompasses nearly

[1] The first case in which this Court adopted an other acts evidence rule is *People v Jenness,* 5 Mich 305 (1858).

identical requirements.[2] In Michigan, all questions involving the admissibility of other acts evidence require the judge to apply MRE 401 and 402, as enforced through MRE 104(b), 403, and 404.

The factors outlined in *People v Golochowicz,* 413 Mich 298, 309; 319 NW2d 518 (1982), serve only to restate the existing evidentiary rules. The first factor, which requires substantial evidence that the defendant committed the other act, is enforced through MRE 402 and 104(b). The second factor, which requires the other act to have a special quality relevant to the charged offense and the purpose for admitting the evidence, is required by the language of MRE 404(b) and the corresponding statute.[3] The third factor simply is a restatement of the MRE 401 and 404 relevancy requirements, and the fourth factor is a restatement of the MRE 403 balancing test.

The difficulty in applying the evidentiary rules is that the relevance and special quality requirements will vary, depending on the purpose for admitting the evidence. *Golochowicz* and earlier cases explain the general evidentiary rules and how to apply them when deciding whether to admit other acts evidence. But, the precedential value of each case is limited to interpretations of the general rules, and to their application to cases involving the same purpose for admitting the evidence.

*Golochowicz* is an identity case under MRE 404(b). Thus, other than to examine interpretation of the general rules, and to examine application of the relevancy and similarity requirements to an

[2] Michigan does not require a limiting instruction.

[3] MCL 768.27; MSA 28.1050. Although the Michigan Legislature has enacted this procedural rule, the Court promulgated procedure controls.

identity case, *Golochowicz* will not apply.[4] Because this case is not an identity case, application of *Golochowicz* is limited. The general test is applicable, however, and there are cases interpreting the individual purposes for admitting the evidence in this case.

### A

The majority explains that the federal rule, through FRE 104(b), requires the judge to decide whether the jury reasonably could find that the other act occurred by a preponderance of the evidence.[5] *Ante* at 68, n 20. Then the majority states that Michigan wrongly adopted a "substantial evidence" requirement because there is no basis or language in Rule 404(r) or the corresponding statute. *Id.* at 66-68. The majority fails to recognize, however, that Michigan has a corresponding Rule 104(b), and thus may have the same requirement as the federal rule.

Both jurisdictions require evidence that the defendant committed the other act. But this Court has not interpreted MRE 104(b) and has not defined "substantial evidence" in the context of other acts evidence. The term has been defined in another context, however.[6]

---

[4] I disagree with the majority's holding that *Golochowicz* is a "bright-line approach to other acts evidence [that] is inadequate in assessing relevance under Rule 404(b)." *Ante* at 73-74.

[5] The majority admits that relevance is required *"as enforced through Rule 104(b)." Ante* at 74. (Emphasis added.) The majority apparently adopts the federal interpretation of Rule 104(b) as applied to other acts evidence. That interpretation requires the trial judge to " 'simply examine[ ] all the evidence in the case and decide[ ] whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.' " *Id.* at 69, n 20.

[6] "Substantial evidence" was defined for purposes of the Administrative Procedures Act, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, but the other acts evidentiary rule predates that definition. Therefore, that definition is not controlling in this case.

In *Soto v Director of Dep't of Social Services,* 73 Mich App 263, 271; 251 NW2d 292 (1977), the Court explained that substantial evidence " 'means evidence which a reasoning mind would accept as sufficient to support a conclusion. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" of the evidence.' "[7] The rule does not require the judge or the jury to evaluate or weigh conflicting evidence. Thus, "substantial evidence" as defined in *Soto* is less restrictive than the federal standard.

Another possible interpretation is that Michigan's standard is the same as the federal standard described in *Huddleston v United States,* 485 US 681, 687; 108 S Ct 1496; 99 L Ed 2d 771 (1988). See *ante* at 68, n 20.[8] To reach that conclusion, we must examine the origin of the term "substantial evidence" as used in other acts evidence cases. In *Golochowicz* at 309, we merely accepted the Court of Appeals adoption of the four safeguards in *People v Wilkins,* 82 Mich App 260; 266 NW2d 781 (1978).[9] The Court of Appeals in *Wilkins* stated that "there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced." *Id.* at 267. The Court cited *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955), and McCormick, Evidence (2d ed), § 190, to support the use of the "substantial evidence" requirement. *Id.*

In *Davis,* we stated that "we are in agreement with defense counsel that such acts if admitted

---

[7] Quoting *Ginsburg v Richardson,* 463 F2d 1146, 1148 (CA 3, 1971), cert den 402 US 976 (1971).

[8] As the majority points out, because the Michigan Rules of Evidence generally parallel the Federal Rules of Evidence, it is helpful to refer to interpretation of the federal rules where this Court has not interpreted Michigan's rules.

[9] Justice BOYLE reiterated the same four factors in *People v Engelman,* 434 Mich 204; 453 NW2d 656 (1990).

may bear on intent only if the jury is first convinced that they had been perpetrated by the accused," and that the jury is the sole judge of the witnesses' credibility. *Id.* at 365. McCormick used the phrase "substantial evidence," to differentiate between a substantial evidence rule and a clear and convincing evidence rule. McCormick did not define substantial evidence, but merely cited *People v Albertson,* 23 Cal 2d 550, 557-581; 145 P2d 7 (1944). McCormick, § 190 at 452, n 51. *Albertson* also does not provide a clear definition of "substantial evidence," but does provide several examples of standards upon which other courts have relied.[10] The theories range from "more than a mere suspicion" to "clear and convincing" evidence requirements.

Although we used the term "convince" in *Davis,* the *Wilkins* Court intuitively recognized that a clear and convincing evidence requirement is too

---

[10] The court explained:

> To thus emphasize the degree of proof required, varying terms have been used for guidance of the trial court. "The evidence which can be so used of other crimes presupposes that the other crime is prima facie established by competent proof." "To render such evidence admissible, it must be shown that it substantially establishes the defendant's guilt as to such other crime . . . or, in other words, it must be shown with reasonable certainty that the accused committed the other crime. . . ." ". . . The degree of proof required in this class of testimony is held on excellent authority to be positive or substantial, but not 'beyond a reasonable doubt.'" "Before evidence of the commission of other crimes by accused is admitted, the trial court should satisfy itself that the evidence substantially establishes the other crimes, clear and convincing proof, and the making out of at least a prima facie case, being required; evidence of a vague and uncertain character, offered for the purpose of showing that the accused has been guilty of similar offenses, should not be admitted under any pretense whatever, nor is mere suspicion, or proof of a suspicious circumstance, sufficient. So, before guilty intent may be inferred from other similar crimes, they must be established by evidence which is legal and competent and plain, clear and conclusive . . . ." [*Id.* at 580. Citations omitted.]

restrictive, and thus adopted McCormick's phrase, "substantial evidence." For *Davis, Wilkins,* and McCormick to be read consistently, "substantial evidence" must mean something more than a mere suspicion,[11] but less than clear and convincing evidence. The *Huddleston* interpretation presents a standard that falls in the middle of the range.[12]

If the majority agrees with the *Soto* definition of "substantial evidence," then the federal standard for enforcing Rule 104(b) is more restrictive. If the majority agrees that the *Huddleston* interpretation of Rule 104(b) is consistent with the term "substantial evidence" as used in McCormick and *Davis,* then the standards for enforcing Rule 104(b) are the same under the federal and Michigan rules.

### B

The requirement that the other act be similar or have a special quality related to the charged act also is required by the federal rule. The majority explained that "[t]he need for other acts to be similar to one another . . . derives from the requirements of logical relevance . . . ." *Ante* at 79, n 34. Because logical relevance must be determined before admitting the other acts testimony, the similarity or special quality requirement applies to both the federal and the Michigan rules.[13]

---

[11] One possible standard, as discussed above, is that "substantial evidence" means more than a scintilla of evidence, but less than a preponderance of the evidence. That theory, however, conflicts with *Davis* and, arguably, McCormick's use of the term "substantial evidence."

[12] The *Huddleston* interpretation also is consistent with MRE 104(b), which requires "evidence sufficient to support a finding of the fulfillment of the [other act]."

[13] Justice BOYLE, writing for the majority in *Engelman* at 218, n 19, explained that "the 'special quality or circumstance,' of the second requirement supplies the 'link,' *Golochowicz* at 310, between the

I agree with the majority's statement that there is a "mistaken assumption that all other acts needed to be similar." *Ante* at 79, n 34. The requirement is that the other act is similar *or* has a special quality relating to the charged act.[14] The majority provides several examples that further illustrate the similarity or special quality requirement. Similarly, several Michigan cases have interpreted the requirement as applied to the specific purpose for admitting the evidence.

C

The majority also discusses whether Rule 404(b) is exclusionary or inclusionary. Although it seems that "exclusionary" is the logical characterization,[15] I believe the distinction is one without a difference,[16] and only causes confusion. The judge must consider the evidence and apply the evidentiary rules to decide whether to admit it. Facts are facts, and evidence is evidence. The facts and evidence do not suddenly change on the basis that the rule is exclusionary or inclusionary. The evidentiary rules must be applied to the facts and evidence, and whether the rule is inclusionary or exclusionary does not alter the facts, the evidence,

charged and uncharged offenses and ensures that the evidence of the separate offense is probative of some fact other than the defendant's character."

[14] The other acts evidence statute also states "any like acts or other acts." MCL 768.27; MSA 28.1050.

[15] Both MRE and FRE 401 and 402 state that all relevant evidence is admissible, except as otherwise provided by the constitution or court rules. Thus, if evidence is excluded because of Rule 404, the rule is exclusionary. Other acts testimony may be admissible, notwithstanding Rule 404. Any evidence that attempts to prove the character of the defendant is excluded. Thus, while evidence must pass muster under Rules 401 and 403, the evidence also must satisfy Rule 404(b) or be excluded.

[16] Admittedly, there might be a philosophical difference, but that does not effect the legal and logical analysis required to determine when to admit other acts evidence.

the rules, or the manner in which the rules are applied.

Furthermore, *all* other acts evidence has the underlying inference that the defendant is a bad person. Thus, as a general rule, the evidence should be excluded. But, if the evidence also is introduced for another purpose, the intermediate inference,[17] and it meets the evidentiary safeguards, the evidence should be admitted.[18] In cases where it is a close call whether to admit the evidence, Michigan precedent suggests that the court should err in favor of exclusion. The reason for excluding "similar bad-acts evidence for substantive purposes is the desire to avoid the danger of conviction based upon a defendant's history of other misconduct rather than upon the evidence of his conduct in the case . . . ." *Golochowicz* at 308.

## II

Michigan's evidentiary rules concerning other acts testimony are capable of clear explanation, and the standards for enforcing the Michigan rules are closely similar to, if not the same as, the federal standards. The Michigan Rules of Evidence and the cases interpreting them are not based on federal law. The comment to the proposed Michigan Rules of Evidence explains that "MRE 404(b) is consistent with prior Michigan law. *People v Smith,* 388 Mich 93; 200 NW2d 196 (1972); *People v Spillman,* 63 Mich App 256; 234 NW2d 475

---

[17] See *Engelman, supra.*

[18] The majority admits that MRE 404(b) " 'is a nonexclusive list of examples of situations in which the *general rule excluding character evidence,* MRE 404(a), is not offended because the evidence is probative of some fact other than the defendant's criminal propensity.' " *Ante* at 66. (Emphasis added.) The majority failed to realize, however, that the safeguards assist in determining whether the general rule is offended and whether the evidence is admitted to show something other than the defendant's criminal propensity.

(1975); MCL 768.27; MSA 28.1050."[19] *In re Proposed Michigan Rules of Evidence,* 399 Mich 951, 974 (1977). The statute was created in conjunction with *People v Rice,* 206 Mich 644; 173 NW 495 (1919), which "was—languagewise and otherwise— the forerunner of that which was enacted as part of the" statute. *Smith* at 96.

Nonetheless, the majority announces that because the rule is confusing, a new rule is to be employed.[20] But the factors of the Michigan rule that have created confusion also are required by the federal rule. The "majority of the Court can overrule a precedent for a good reason, a bad reason, or no reason at all." *People v Cetlinski,* 435 Mich 742, 768; 460 NW2d 534 (1990) (opinion of LEVIN, J.). But precedent should not be lightly discarded. This Court should "give respect to precedent and not overrule or modify it unless some substantial reason is given for doing so." *Wood v Detroit Edison Co,* 409 Mich 279, 297; 294 NW2d 571 (1980) (opinion of MOODY, J.).

If the majority is overruling precedent to clarify the law, it "might be a persuasive reason . . . if

[19] The text of the statute reads:

In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant.

[20] The apparent motive in adopting the new rule is to extirpate the existing safeguards planted by this Court years ago. A full analysis and comparison of the two rules, however, suggests that the federal rule really is the same, if not more restrictive than Michigan's rule. Thus, in my view, the majority accomplishes nothing more than adding to the already confused state of this jurisprudentially significant issue.

the majority's decision eliminated or reduced confusion instead of replacing one form of possible confusion with another." *Cetlinski* at 768. I believe this Court would better serve our purpose by looking to the federal cases that interpret the rule only for assistance in clarifying and providing guidance on the current rule, rather than asking trial courts to start using anew a rule that is not clearly distinguished from the current rule.