# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID ANTHONY SARACHICK,

Defendant-Appellant.

UNPUBLISHED
April 24, 2018

No. 332859
Calhoun Circuit Court
LC No. 2015-003395-FH

Before: MURPHY, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

Defendant, David Anthony Sarachick, appeals as of right from his jury trial conviction of aggravated stalking, MCL 750.411i. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 42 months to 20 years of imprisonment. We affirm.

## I. BACKGROUND

This case results from a dispute involving a roofing job completed on defendant's home in Battle Creek, Michigan. The roof was completed by Ron's Roofing, which is owned by the victim. The roof passed city inspection, and defendant made payments on the roof for approximately five months without complaint. In February 2015, defendant called Ron's Roofing to submit a complaint regarding a piece of "drip metal" that was allegedly bent. Defendant later complained about nails from the roof coming through the soffit. Although the victim believed that there was nothing wrong with the roof, the victim agreed to send a crew to fix the issues that defendant identified. Defendant, however, refused to allow the crew access to his property. Eventually, the victim and defendant entered into a hold-harmless agreement under which the victim waived defendant's remaining debt and agreed to pay for another contractor to perform the repair and the victim agreed to hold harmless and stop disparaging Ron's Roofing.

The next time the victim saw defendant, he observed that defendant placed a sign that said "Ron's Roofing Sucks" on the side of the road. The victim observed defendant putting up similar signs on two other occasions. Defendant would motion like he wanted to fight the victim, but the victim refused. The victim, his wife, and his employees removed "hundreds" of signs over the summer of 2015.

-1-

Defendant also left the victim seven voicemails in one night in June 2015. The victim thought these phone calls were threatening both to him personally and his grandchildren. In the voicemails, which were eventually played for the jury, the victim repeatedly disparages and threatens the victim. The victim turned a recording of those voicemails over to law enforcement, who advised defendant to stop contacting the victim and his family.

Nevertheless, defendant's conduct continued. Defendant went to public city-commission meetings wearing a T-shirt that said "Ron's Roofing Sucks" and expressed his displeasure with Ron's Roofing and the city for approving the roof. Eventually, the mayor intervened and prevented defendant from continuing to voice his displeasure at these meetings.

The victim also stated that he was talking to a potential customer regarding a roof estimate in defendant's neighborhood when defendant parked his vehicle on the road, exited it, and started cursing at the victim in front of the victim's grandson. Defendant told the customer that he would come back later to explain why she should not hire Ron's Roofing, before exiting the scene. The victim testified that, during this encounter, defendant motioned to him that he wanted to fight.

In another incident, the victim was driving toward the hardware store when a white car crossed the center line and tried to run him off the road. The victim did not recognize this vehicle, but he followed it. The car eventually stopped and defendant exited the vehicle yelling obscenities at the victim.

According to the victim, he had a mental breakdown during this time because he was so stressed. He stopped going to homebuilders-association meetings and ceased doing charity work because he was tired of trying to explain the signs to people in the community. In addition, the victim lost 30 pounds because he could not eat. The victim tried unsuccessfully to obtain a personal protection order (PPO) against defendant. In October 2015, however, defendant was arraigned on the charge of aggravated stalking and the victim was granted a PPO.

Before trial, the prosecutor filed a notice of intent to introduce evidence under MRE 404(b) involving defendant's stalking of a different victim, Mike Kline, to show a repeated course of conduct involving defendant's continuous harassment of other individuals. The prosecutor argued that this evidence was admissible to show proof of motive, opportunity, intent, preparation, scheme, and plan. The trial court admitted the evidence to show defendant's intent to harass the victim and because there was a direct link between the letters in this case and defendant's past behavior.

On the day of trial, defendant indicated that he wanted to represent himself. The trial court allowed defendant to do so but ordered defendant's defense counsel to be present if defendant required assistance.

At trial, the PPO coordinator for the district court in Calhoun County testified that Mike Kline was granted a PPO against defendant in 2011. Defendant made threats to Kline, posted flyers stating, "KRI Contracting will screw you," and wore shirts bearing the same message. Kline was granted another PPO against defendant in 2012 after defendant drove by a job site and yelled that Kline was a "crack head." Another incident occurred when defendant pulled up next

to Kline in a parking lot, "flipped him off," and yelled profanity. Defendant was eventually charged with stalking Kline and entered a no-contest plea to the charge.

Defendant called himself as a witness at trial. He admitted to posting the signs, complaining about Ron's Roofing at city-commission meetings, and wearing the T-shirts, but denied ever stalking the victim or attempting to run him off the road. After the close of proofs, the jury found defendant guilty of aggravated stalking.

Following his conviction, defendant filed a motion for an evidentiary hearing or a new trial on August 19, 2016. He argued that he was denied effective assistance of counsel because defense counsel failed to interview witnesses and adequately prepare for the case and because defense counsel failed to make a pre-trial motion to exclude evidence regarding defendant's constitutionally protected speech. The trial court held a hearing regarding defendant's ineffective-assistance-of-counsel claim during which defense counsel testified that he met with defendant before trial several times either before or after hearings at the courthouse. Defense counsel acknowledged that he did not file any motions before trial, but stated that his strategy was to object at trial if the prosecutor attempted to introduce evidence of defendant's constitutionally protected conduct. Defense counsel did not believe that the prosecutor would have anticipated the objections he had to the evidence, and he believed that he would have a better chance of getting the evidence excluded with objections rather than with a pretrial motion.

Defense counsel admitted that defendant was not happy with his witness list, but testified that defendant made a list of over 50 witnesses, many of whom did not have any relevant testimony for trial. Defense counsel also did not contact any character witnesses because he thought it was a bad strategy to call character witnesses in this case because it would give the prosecutor the opportunity to rebut defendant's character. He believed that any rebuttal would be far more damaging than any advantage gained by presenting positive character witnesses.

The trial court concluded that defense counsel was not ineffective. With regard to the constitutionally protected speech, the trial court explained that the evidence was admissible to give detail and meaning to the other conduct that occurred in this case, but that the bases for the conviction were the other threats that defendant made over the phone and the physical threats that defendant made to the victim. The trial court believed that defense counsel was clearly prepared and had various contacts with defendant. Defendant may have wanted to have more meetings, but the trial court noted that there were certain practical limitations and that defense counsel was not at defendant's "beck and call." In addition, defense counsel had a strategy regarding the free-speech issue. The trial court did not know whether it would have been successful, but that was not the question. Defense counsel had researched the case, and he knew how the witnesses were going to testify. As a result, the trial court stated that there was "no way" that it could find that defense counsel's representation was deficient. The trial court denied defendant's motion for a new trial.

This appeal followed.

## II. ANALYSIS

### A.   Effective Assistance of Counsel

On appeal, defendant first argues that the trial court erred in denying his motion for a new trial based on the ineffective assistance of his counsel. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). This Court reviews a trial court's grant or denial of a new trial for an abuse of discretion. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes. *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014).

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). "A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Id*.

*Investigating Witnesses.*   First, defendant argues defense counsel failed to discuss possible witnesses with him. Both defendant and defense counsel testified that they met to discuss the witness list. Defense counsel, however, felt that many of the witnesses that defendant wished to call did not have relevant information for the trial and that submitting character witnesses was not a good strategy in this case because the prosecutor's rebuttal evidence would have been damaging. Defendant has failed to explain in his brief on appeal what witnesses his trial counsel failed to investigate and what helpful testimony, if any, those witnesses would have provided. Moreover, defendant has not provided any persuasive argument that opening up his character to rebuttal witnesses would have been sound trial strategy. Decisions regarding what witnesses to present are presumed to be a matter of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Defendant has not shown that his counsel's performance was deficient or that he suffered prejudice with regard to investigatory witnesses.

*Discussing Exhibits.*   Next, defendant argues that his trial counsel did not discuss exhibits and videos with him. Defendant, however, admitted that he did not provide any videos or exhibits to his counsel before trial. Although defendant claims that he was unable to provide any videos to defense counsel, the record indicates that defense counsel and defendant met at least seven times to discuss defendant's case. If defendant wanted his trial counsel to review specific pieces of evidence in defendant's possession, he could have provided that evidence to defense counsel on one of these occasions, or by other appropriate means, such as electronic or physical mail or personal or hired delivery. Defense counsel cannot be deemed ineffective for failing to review evidence in defendant's control that defendant did not share with defense counsel.

-4-

*Forgoing a Pretrial Motion to Exclude Evidence.* Defendant also claims that defense counsel did not adequately prepare for trial because he did not file a pretrial motion to exclude evidence of defendant's constitutionally protected speech, i.e., posting signs, wearing messages on his clothing, and commenting at city-commission meetings. Defense counsel testified at the evidentiary hearing that he planned to object to this evidence at trial and explained that he had three theories to support his intended objections: first, the definition of "harassment" excludes constitutionally protected activity or activity with a legitimate purpose; second, the signs and shirts referred to Ron's Roofing, which was a separate legal entity from the victim; and three, there was no evidence that the signs were ever placed in property owned or leased by the victim, therefore the posting of signs did not constitute unconsented contact. Defense counsel did not believe that the prosecutor would anticipate his objections and that reserving the objections for trial, rather than making a pretrial motion, would give defendant a tactical advantage. Because decisions regarding the presentation of evidence are presumed to be matters of trial strategy, we find that defendant has not shown that his counsel was ineffective for failing to file a pretrial motion to exclude. *Rockey*, 237 Mich App at 76-77.

*Meeting With Defendant.* Defendant next argues that defense counsel was not prepared for trial because he only met with defendant before or after hearings at the courthouse. Defense counsel testified that he specifically chose to hold meetings at the courthouse because it was closer to defendant's home, and because of his practice, defense counsel was typically at the courthouse every day of the week. We fail to see how the location of these meetings, which appear to have been scheduled for the convenience of both defendant and his trial counsel, in any way impacted defense counsel's ability to represent defendant. Rather, defendant's argument appears to be that defense counsel did not spend enough time meeting with him. On this question, we agree with the trial court that defense counsel was not required to be at defendant's beck and call. The record makes apparent that defense counsel met with defendant at least seven times before trial. Even if some of these meetings were short, defendant has failed to show any deficient performance that would have been cured by more or longer meetings.

Based on the testimony provided at the evidentiary hearing, we conclude that the trial court did not clearly err in finding that defense counsel was prepared for trial. Defense counsel's choice of meeting location, selection of witnesses, and decision to forgo filing a pretrial motion to exclude evidence were all the result of reasonable trial strategy that we will not second guess on appeal.

B.    Sufficiency of the Evidence

Second, defendant argues that the evidence was insufficient to convict him of aggravated stalking. When reviewing a sufficiency-of-the-evidence claim, this Court reviews the evidence de novo "in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014).

Stalking is a series of two or more separate and noncontiguous acts evidencing repeated and targeted harassment of another individually that actually and reasonably causes the other individual to suffer emotional distress. MCL 750.411i(1)(a),(d),(e). Harassment encompasses many types of unconsented contact including, but not limited to, following or appearing within

the sight of the targeted individual, approaching or confronting the targeted individual, and sending mail or electronic communications to the targeted individual. MCL 750.411i(1)(d),(f). "Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose." MCL 750.411i(1)(d). Under MCL 750.411i(2)(d), a second conviction of stalking renders the perpetrator guilty of aggravated stalking.

*Sufficient Evidence Supported Defendant's Conviction.* Viewing the evidence in the light most favorable to the prosecution, we conclude that sufficient evidence supported defendant's conviction. The prosecutor presented evidence that defendant was previously convicted of harassing a different roofer, Mike Kline. The prosecutor submitted letters and recorded voicemails from defendant to the victim in this case, in which defendant threatened to put Ron's Roofing out of business like he did to Kline's business. In addition, defendant left seven voicemails for the victim over the course of one evening. In the voicemails, defendant threatened to close down Ron's Roofing, called the victim names such as "f--ker" and "c--k sucker," told the victim that he had "f--ked with the wrong person," and cursed extensively. Defendant accused the victim of causing damage to his roof, employing "ex-cons," breaking into an ice rink, and committing tax evasion. Defendant challenged the victim to come to a bar and meet defendant and told the victim to attend the next city commission meeting to hear what defendant had to say about the victim and Ron's Roofing. Additionally, the victim testified that defendant approached him on at least two occasions and physically motioned that he wanted to fight the victim and that, on another occasion, defendant attempted to run him off the road while he was driving. According to the victim, he suffered a mental breakdown due to the stress of this situation, stopped participating in his normal activities, and lost 30 pounds during the ordeal because he could not eat.

Although defendant disputes this testimony, the jury's final conviction indicates that it found the prosecutor's case credible and convincing. As the trier of fact, the jury, not this Court, is the final judge of credibility. *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

Thus, the record shows that the prosecutor presented evidence that defendant engaged in at least ten separate instances of unconsented, harassing conduct directed toward the victim. As a result, the victim actually and reasonably suffered emotional distress. We note that, not only did defendant threaten the victim's reputation, business, and livelihood, on two occasions defendant threatened the victim's personal security by trying to instigate a fight with the victim. On a third occasion, when defendant crossed the center-line to run the victim off the road, defendant's conduct crossed the line demarking threatening words from a real and imminent risk of physical harm. Accordingly, we conclude that there was sufficient evidence that defendant stalked the victim. Because this was defendant's second conviction for stalking, the record supports defendant's conviction for aggravated stalking.

Defendant challenges this conclusion on several grounds. First, defendant argues that the trial court erred by admitting evidence regarding defendant's prior stalking case. Next, defendant argues that his conviction actually, and impermissibly, rests on the evidence that defendant posted signs and wore shirts bearing the phrase "Ron's Roofing Sucks" and that defendant spoke out against the victim and his company at a city-commission meeting. Defendant argues that this conduct is protected under the First Amendment and should have been excluded at trial. Finally, defendant asserts that the prosecutor committed misconduct by

directing the jury to consider this evidence and that the jury questions indicate that defendant's convictions resulted from his constitutionally protected activity.

"The decision whether to admit evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *Douglas*, 496 Mich at 565 (internal quotation marks and citation omitted). Nonetheless, when "the decision involves a preliminary question of law, which is whether a rule of evidence precludes admissibility, the question is reviewed de novo." *McDaniel*, 469 Mich at 412. "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (internal quotation marks and citation omitted).

*Other-Acts Evidence Was Admissible*. Defendant contends that the trial court improperly admitted evidence regarding defendant's previous stalking case. We conclude that, at a minimum, evidence of defendant's prior stalking conviction was admissible to prove one of the necessary elements of the offense of aggravated stalking. See MCL 750.411i(2)(d). Moreover, we agree with the trial court that evidence of defendant's previous stalking case was admissible under MRE 404(b).

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), the Supreme Court established a four-part test to determine the admissibility of other-acts evidence under MRE 404(b). First, "the prosecution must offer the other acts evidence under something other than a character to conduct theory." Second, "the evidence must be relevant under [MRE] 402 . . . to an issue or fact of consequence at trial." *Id*. "Third, the trial judge should employ the balancing process under [MRE] 403." *Id*. at 74-75. "[A] determination must be made whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence" under MRE 403. *Id*. at 75 (internal quotation marks and citation omitted; second alteration in original). "Finally, the trial court, upon request, may provide a limiting instruction under [MRE] 105." *Id*.; see also *People v Denson*, 500 Mich 385, 316-317; 902 NW2d 306 (2017) (explaining that, to be admissible under MRE 404(b), other-acts evidence must be offered for a proper purpose as well as be logically relevant (i.e., material and probative), and the probative value must not be substantially outweighed by unfair prejudice).

We conclude that the other-acts evidence was admissible under MRE 404(b) to show defendant's scheme, plan, or system of stalking construction professionals. "[E]vidence of

similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). "Logical relevance is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception or plot." *Id*. at 64. "General similarity between the charged and uncharged acts does not, however, by itself, establish a plan, scheme, or system used to commit the acts." *Id*.

Defendant referenced his conduct in the prior case in a letter that he sent to the victim in which he threatened to ruin the victim's business like he did to Kline's business. In each case, defendant created flyers, signs, and shirts disparaging the roofer's business. Defendant made threatening phone calls to each victim and approached each victim in public places, yelling obscenities and threats. Therefore, because defendant has engaged in essentially the same course of conduct with two different victims, we find that the two situations are sufficiently similar to support an inference that they are part of a common scheme, plan, or system of stalking roofers. Moreover, by asserting that he did not verbally or physically threaten the victim in this case, defendant made his intent to harass the victim a material issue of fact. Because the other-acts evidence tended to negate defendant's assertion, it is also relevant under MRE 404(b) to prove defendant's intent to harass. See *Vandervliet*, 444 Mich at 78-80. Accordingly, we conclude that the trial court did not err by admitting evidence of defendant's prior stalking.

Defendant's argument that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice is also without merit. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). As discussed above, the other-acts evidence involving defendant's previous stalking case was highly probative to show that defendant intended to harass the victim as part of a common scheme, plan, or system of stalking roofers. This evidence was prejudicial to defendant; however, he has failed to demonstrate that it was unfairly prejudicial in light of the evidence's strong probative value. See MRE 403. More importantly, defendant could have asked for a limiting jury instruction regarding the other-acts evidence, but failed to do so. We will generally not find error when a limiting instruction could have cured any prejudice to the defendant. *Unger*, 278 Mich App at 235. Accordingly, defendant's claim is without merit.

*Evidence of Defendant's Constitutionally Protected Activity Was Admissible.* The parties agree that defendant's conduct in posting signs, wearing shirts, and commenting at a city-commission meeting was constitutionally protected. The constitutional nature of this evidence does not, however, render it irrelevant to this case. We agree with the trial court that the evidence of defendant's constitutionally protected activity was relevant to provide context to the evidence of defendant's legally prohibited conduct. Defendant's invitation to the victim to attend the city-commission meeting makes relevant the disparaging remarks defendant made there. The signs and shirts reading "Ron's Roofing Sucks" help explain the escalation of what started as a business dispute and eventually evolved into defendant attempting to run the victim off the road. The signs, shirts, and commission-meeting comments all illustrate how defendant carried through his written threat to ruin the victim's business and help explain why repeated contact with defendant was so emotionally taxing for the victim. We find no error in the admission of this context-based evidence.

*Defendant Has Not Shown that Constitutionally Protected Activity Was the Basis of His Conviction*. Finally, defendant argues that it was clear that constitutionally protected activity was used as a basis for his conviction because the prosecutor argued during closing argument that the jury should consider defendant's conduct at city commission meetings, posting signs, and wearing T-shirts. "Because the challenged prosecutorial statements in this case were not preserved by contemporaneous objections and requests for curative instructions, appellate review is for outcome-determinative, plain error." *Unger*, 278 Mich App at 235.

In her closing argument, the prosecutor recounted the evidence, focusing first on the letter defendant sent to the victim and the seven voicemails. The prosecutor then explained how defendant's behavior escalated into him physically approaching and confronting the victim. Next, the prosecutor recounted the city-commission meeting and the signs defendant posted about Ron's Roofing, before explaining the testimony regarding defendant running the victim off the road. Finally, the prosecutor addressed the victim's alleged stalking of Mike Kline. The prosecutor argued that the evidence showed "a pattern of behavior" that constituted stalking.

Defendant did not object to the prosecutor's closing argument and, accordingly, did not seek a curative instruction. Still, the trial court instructed the jury that a "lawyer's statements and arguments are not evidence." The trial court also instructed the jury regarding the elements of aggravated stalking and instructed that the jury may only convict defendant on the basis of admissible evidence. While the jury was deliberating, it sent several questions to the trial court. One question asked, "Do the signs represent freedom of speech?" Another question asked, "Do the signs represent a form of unconsented conduct?" Although the answers to these questions were not included in the record, the trial court stated, "It should be indicated [the jury] did have several questions that were responded to and the parties agreed to the response."

Defendant argues on appeal that the prosecutor's remarks and the jury's questions indicate that the jury convicted defendant on the basis of constitutionally protected activity. After reviewing the prosecutor's argument, we conclude that, on balance, the prosecutor's remarks were merely an overview of the evidence properly admitted at trial, which tended to show defendant's scheme, plan, or system in stalking roofers. Because prosecutors "are generally free to argue the evidence and all reasonable inferences from the evidence as it related to their theory of the case," *Unger*, 278 Mich App at 236, we find defendant's claim of prosecutorial conduct to be without merit.

Moreover, we note that defendant did not object or request a curative instruction. This Court will generally not find error requiring reversal when an instruction would have cured any prejudice. *Id.* at 235. The trial court instructed the jury on the elements of aggravated stalking, instructed the jury that the prosecutor's statements and arguments were not evidence, and instructed the jury that it could only convict defendant on the basis of admissible evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). We are not persuaded that the prosecutor's comments had a prejudicial effect so severe that it was not cured by the trial court's instructions. *Id.* Finally, although the jury did submit questions regarding defendant's constitutionally protected activity, defendant agreed to the trial court's responses to those questions. A party may not claim as reversible error something that he deemed proper at trial "since to do so would permit the party to harbor error as an appellate parachute."

*Braverman v Granger*, 303 Mich App 587, 608; 844 NW2d 485 (2014) (internal citation and notation omitted).

Therefore, we find each of defendant's arguments regarding impermissible uses of his constitutionally protected activity to be without merit.

Affirmed.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Brock A. Swartzle