*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT BERNARD COLLINS,

        Defendant-Appellant.

UNPUBLISHED
October 6, 2022

No. 348957
Genesee Circuit Court
LC No. 18-042889-FC

## ON REMAND

Before: REDFORD, P.J., and RIORDAN and RICK, JJ.

RICK, J. *(concurring in part and dissenting in part).*

Respectfully, I dissent in part and concur in part. My esteemed colleagues have concluded that the trial court did not err in permitting other acts testimony to be admitted at defendant's trial. I reach a different end point. In my opinion, the trial court committed error for admitting MRE 404(b) evidence. I do agree with the majority that, even if the 404(b) evidence was improperly admittedly, the trial court should be affirmed because the admissibility of the evidence was harmless error. On that basis, I concur with the majority to affirm defendant's conviction of two counts of first-degree criminal sexual conduct (CSC-I) while armed with a weapon, MCL 750.520b(1)(e), against his former spouse.[1]

We have been instructed by the Michigan Supreme Court, on remand, to determine whether the trial court erred when it permitted the prosecution to introduce evidence of defendant's prior conviction of a sexual assault against a neighbor in order to prove lack of consent in defendant's trial for sexually assaulting his wife. The Supreme Court directed that our analysis of the

---

[1] As the majority acknowledges, following his trial, defendant was convicted of unlawful imprisonment, MCL 750.349b, assault with intent to do great bodily harm less than murder, MCL 750.84, attempted assault with intent to do great bodily harm less than murder, 750.92(2), felonious assault, MCL 750.82, domestic violence, MCL 750.81(2), and two counts of first-degree criminal sexual conduct (CSC-I) while armed with a weapon, MCL 750.520b(1)(e).

-1-

admissibility of the 404(b) evidence be guided by *People v Denson*, 500 Mich 385; 902 NW2d 306 (2017). My analysis is that applying *Denson,* the 404(b) evidence admitted by the trial court in this case was erroneous. By permitting that testimony, the trial court erred because the prosecution failed to establish that it was logically relevant to a proper noncharacter purpose.

The majority cites the appropriate standard of review of this case. I take issue with the majority's legal analysis. The majority avers that evidence of defendant's breaking and entering and sexual assault of a neighbor approximately three decades prior to the instant case was properly admitted at trial. I disagree.

In 1990, defendant broke into the home of a neighbor and sexually assaulted her. The evidence was that the victim, ST, knew defendant only as someone who lived across the street. *People v Collins*, unpublished per curiam opinion of the Court of Appeals, issued December 3, 2020 (Docket No. 348957), p 5. The record reflects that ST and defendant otherwise had no relationship. According to the preliminary examination testimony of ST[2], on the date of her sexual assault, the defendant appeared at her front porch around 4:00 a.m. Defendant was pounding on the door, demanding to use ST's lawnmower. ST had been sleeping on her couch at the time on the main floor of her home. Her three children, ages 22 months, 4 and 5 years old were sleeping in the upstairs in a bedroom. ST shouted at the defendant. Defendant shouted at ST to 'shut up'. He then broke a window out of her kitchen door, and entered the ST's house by putting his arm through the broken window and unlocking the kitchen door. ST called the police but before they arrived, ST saw defendant inside her home crawling up the stairs toward her. ST was armed with a shotgun. The defendant over-powered ST, causing her to drop the shotgun. The defendant forcefully pushed her onto her bed, striking her multiple times in the face. A violent sexual assault then ensued. Defendant forced ST to perform oral sex on him before he entered her vagina with his penis. The assault ended only when the police arrived at the scene and they pulled defendant off of ST. The record is void of any evidence that defendant ever claimed the incident was consensual.

The facts of this case of intimate partner violence are gruesome and brutal, and very different from the 1990 case. The jury learned of the facts of this case after the trial court admitted the preliminary examination testimony of the victim, RC. The trial court ruled RC was unavailable for trial under MRE 804(a)(5). It permitted the prosecution to use RC's preliminary examination testimony under MRE 804(b)(1).

RC testified she had been married to defendant for 8 years. They had lived together in the former marital residence. RC testified she was then estranged from defendant, and she was living with her sister. RC testified that she came to the marital residence to remove televisions from the home. According to RC, defendant previously had damaged a large television out of anger. RC told defendant he could watch a television he brought to the residence. It was then that defendant became enraged. RC testified that he threw her on a bed, got on top of her and began beating her in the face with his fists. RC attempted to deflect the blows, which then prompted defendant to

---

[2] The victim in the 1990 case had died by the time of the trial in the instant case. Consequently, the trial court in the instant case admitted a transcript of ST's prior testimony by stipulation of the parties as PX#97.

yell at RC, saying: "This is what you want. I don't disrespect you. I don't call you on your name. I [sic] only been good to you but that ain't [sic] good enough for you. This is what you want . . . ——" PX#94, p. 9. While RC pleaded with defendant to stop, he pulled out a box cutter and began swiping at RC's throat, all the while telling RC she was going to die. RC tried to block the blade, but she was wounded in her chest. She attempted to use an extension cord she had in her hand to defend herself. Defendant took the cord from her and attempted to choke her around the neck. RC pleaded for her life. She thought she convinced defendant to allow her to get off the bed and take some pain medication. However, after she sat up in the bed, defendant then began threatening to light her on fire to kill her. According to RC:

> [A]fter I sat up in the bed he started saying he was going to set me on fire and he kept saying, "I wish I had some gasoline. I'll set your ass on fire and put you in the trunk of your car" and then he took a lighter out of his pocket and started flicking it at me like trying to set my clothes on fire and I started blowing and waving it to put the fire out. PX#94, p.12.

Unfortunately, defendant's terrorizing did not end there. Defendant demanded RC take off all her clothes, and she unwillingly complied out of fear for her life. RC began cry, which caused defendant to taunt her, as RC explained:

> I'm starting to cry, plead with him. He's calling me all kind of bitches (sic), calling me a liar, saying I'm a hoe. Telling me our relationship was nothing but a joke from the beginning. He wished he had listened to everybody but he was so blinded by love. Told me I was cheating on him and the signs was (sic) always there but he could never prove it and I started trying to talk to him and tell him I have never cheated on you. What signs are you talking about? And he just kept telling me, yeah, you're a bitch. You're a hoe. You're a liar. . . . PX#94, p. 13.

RC thereafter attempted to flee. She ran to the bathroom off their bedroom and locked herself inside. She grabbed a bottle of disinfectant spray. Just then, defendant kicked the door in. RC sprayed him in the face. Defendant lost his footing, and RC ran to the living room. She fell, hitting her head. Defendant caught up with her, and compelled her back into the bedroom. RC was crying uncontrollably and defendant began smoking a cigarette. According to RC: " . . . I guess he started feeling sorry for me and I still would not stop crying. So that's when he told me to lay down, let's have sex and you'll feel so much better after we have sex." When asked what she said, RC testified: "I didn't say no. I did what he told me to do because I was afraid for my life so he said lay down, so I laid down." PX#94, p.16. Defendant performed oral sex on RC before putting his penis in RC's vagina. RC stated that during the sexual assault, defendant did not make any threats to her. When asked what happened next, RC testified: "He ejaculated. He got up. Cleaned himself off. I just turned over my side of the bed and just laid there crying." RC estimated the entire violent ordeal lasted from midnight until 7:30 a.m. the next morning. PX#94, p. 17.

As noted by the majority, in *Denson*, 500 Mich at 398, our Supreme Court instructed that the salient test for other-acts evidence admissibility is enunciated in *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993). To admit 404(b) evidence the trial court must determine (1) the evidence is offered for a proper purpose under MRE 404(b); (2) that the evidence is relevant;

and (3) the probative value of the evidence is not substantially outweighed by unfair prejudice; and (4) the trial court may, upon request, provide a limiting instruction to the jury. *Denson*, 500 Mich at 398. It is the prosecution's burden to establish a proper noncharacter purpose for the admission of the other acts evidence. *Id*. The prosecution must show the other act has relevance and is not offered to demonstrate the defendant's general inclination for wrongdoing. *Id*.

The majority concludes that the prosecution met its burden by articulating a noncharacter purpose——lack of consent. I do not agree. Contrary to the rationale offered by the trial court and accepted by the majority, it is evident to me that evidence of defendant's sexual assault of TS approximately three decades prior was character evidence merely disguised as evidence of lack of consent. There were no similarities between the two heinous acts. One involved a stranger, the other, an intimate partner. One involved unprovoked breaking and entering that escalated into a sexual assault, the other began as an argument between estranged spouses and turned into an all-night, seven-hour torture marathon involving box cutters, electrical cords, words of humiliation, and two non-consensual sexual acts. One ended when the police arrived and literally pulled defendant off of TS, the other ended when defendant fell asleep and RC escaped. It is evident to me that the lone purpose of admitting the 1990 assault was to prove defendant's character and conformity when he savagely sexually assaulted and brutalized RC. This is a "weed" disguised as something else. It is an improper purpose and prohibited under MRE 404(b). See *Denson*, 500 Mich at 398.

For that reason, I would conclude that the trial court erred in admitting evidence of the 1990 sexual assault in this case.

I do agree, however, with the majority that even if the admission of 404(b) evidence was in error, it would be harmless error. This trial lasted five days. RC's testimony was sufficiently descriptive of the horrors she endured at defendant's hands. Other witnesses testified, including a Hurley medical professional who examined RC and provided her with treatment within hours of her assault, a SANE (Sexual Assault Nurse Examiner) nurse from the Young Women's Christian Association Flint; local law enforcement who interviewed RC and observed the condition of the marital residence; a deoxyribonucleic acid (DNA) expert; and a Michigan State Police forensic scientist. For that reason, I would affirm defendant's convictions of two counts of CSC-I.

/s/ Michelle M. Rick